**J.R. COUSIN INDUSTRIES, INC.,**
**Plaintiff–Appellee,**

v.

**MENARD, INC., Defendant–Appellant.**

No. 96–3568.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1997.

Decided Oct. 3, 1997.

Page Anthony Pate (argued), R. Matthew Martin, Jones, Day, Reavis & Pogue, Atlanta, GA, for Plaintiff–Appellee.

Stephen G. Bohrer (argued), D. Andrew Bell, Eau Claire, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and BAUER and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

Section 2–515(a) of the Uniform Commercial Code permits either party to a sale of goods, on reasonable notification to the other, to inspect, test, and sample sold goods that are in the possession of the other party, for the purpose of ascertaining facts and preserving evidence. So it is a little like a pretrial discovery rule; and it is at the center of this diversity breach of contract suit that resulted in a jury's awarding $70,000 in damages to the seller, J.R. Cousin Industries, from which the buyer, Menard, appeals. There are few reported cases dealing with section 2–515(a), and none dealing with the specific issues presented by this appeal; we write largely on a clean slate.

Cousin is an importer of hardware, Menard a retail chain selling home-improvement products. Cousin agreed to sell Menard more than 20,000 low-cost sinks and toilets that had been manufactured by a firm in Mexico. The goods were to be delivered directly by the manufacturer to Menard's stores. Cousin agreed to credit Menard for the price of any of the sinks or toilets that were defective or that Menard's customers returned to Menard for *any* reason, whether or not the returned good was defective. The contract gave Cousin the option, with respect to defective and other returned products, to have them shipped back to it at its expense or to have them destroyed by Menard. Cousin opted for destruction by Menard, presumably because the weight of the goods relative to their value (the price to Menard of the sinks was only $22 and of the toilets only $19) would make it uneconomical to ship them back to Cousin.

The first sinks and toilets were shipped to Menard in December 1994. Menard subtracted from Cousin's invoices what Cousin thought an unusually high amount for customer returns; upon inquiry Cousin was informed by Menard that many of the sinks and toilets were defective. In June of the following year Cousin asked Menard to let it inspect the defective goods at Menard's premises. Menard claims that by this time it had destroyed more than $15,000 worth of the goods because they were defective. After permitting Cousin to inspect a small quantity of undestroyed returned goods, it refused to allow further inspections and destroyed the rest. It subtracted a total of $72,000 from Cousin's invoices, for customer returns, and this is the amount for which Cousin has sued. Cousin claims that Menard broke the contract by violating section 2–215(a) (codified in Wisconsin as Wis. Stat. § 402.515(1)), which if applicable and not waived (issues raised by the appeal) conferred a right of inspection on Cousin. The jury's award of $70,000 gave Cousin slightly less than it was asking, presumably in consideration of the possibility that at least some of the returns either were bona fide or had been destroyed by Menard before it received Cousin's request to inspect the returned goods.

The award of damages may seem very peculiar, as there is no doubt that the contract authorized Menard to destroy any goods bought from Cousin that Menard's customers returned, for whatever reason. Cousin defends the verdict on the ground that section 2–515(a) authorized it by notice to freeze the process of destruction, so that any goods destroyed after it asked Menard to hold them for inspection were destroyed in breach of the contract and Cousin is entitled to their value as damages for the breach. Since some of the goods were destroyed before the June 1995 notice, when the contract clearly authorized such destruction, and since some and perhaps most or even all of the goods destroyed later were defective or returned and hence eligible for destruction under the contract, the jury's decision to award Cousin 97 percent of the full value of the goods that had been returned to Menard may seem an obvious overestimation of the damages. But Menard does not argue (but merely hints) that the jury's award was excessive. It would ill behoove Menard to complain about the size of the award if it violated the Uniform Commercial Code in failing to hold the goods for Cousin's inspection. For by doing this it prevented an accurate estimation of Cousin's damages. Even more important, it also prevented Cousin from attempting to obtain reimbursement for its lost sales from its Mexican supplier, by depriving Cousin of the evidence that the goods were defective, if they were. If most of the returned goods were defective, and if had it not been for Menard's alleged violation of the UCC Cousin could have recovered the cost of the goods from the manufacturer, the jury's award was not unreasonable—provided the UCC really was violated. Menard argues that section 2–515 is limited to cases in which the buyer either rejects the goods or revokes its acceptance of them, but that in any event Cousin waived by contract any right of inspection that the statute might have conferred on it.

The section does not contain the limitation for which Menard contends; nor is there a reason to interpolate such a limitation by judicial interpretation. Menard cites no cases for its reading because no case ad-

dresses the issue (though *General Matters, Inc. v. Paramount Canning Co.*, 382 So.2d 1262 (Fla.App.1980), hints at rejection of Menard's position). It cites the unpublished notes by Professor Karl N. Llewellyn, the principal draftsman of the UCC, dated September 18–20, 1945, and filed in Box 4068, Folder 8, in the American Law Institute Archives of the University of Pennsylvania Law School. The section was originally confined to cases of rejection and the notes say it was broadened to take in "one most important case, that of revocation of acceptance when the buyer claims a lien." But the section was not expanded to take in *just* that "one most important case." The section does not refer to rejection and revocation. The wording is perfectly general, perhaps because the draftsmen realized that there might be other "important case[s]" that they hadn't foreseen.

The Official Comment on the section (and only a public comment could be thought to illuminate the thinking of the legislators who state by state voted to adopt the Uniform Commercial Code and thus make it positive law) does not support the gloss that Menard seeks to place on the statutory language. It describes the purpose of the section as being "to afford either party an opportunity for preserving evidence, whether or not agreement has been reached, and thereby to reduce uncertainty in any litigation and, in turn perhaps, to promote agreement." This statement of purpose is as applicable to a dispute over Menard's right to destroy returned goods as it would be if Menard had rejected them.

Were the section limited to rejection and revocation, buyers could sidestep it by accepting defective goods rather than rejecting them, and then, rather than revoking their acceptance, by complaining of a breach of warranty under UCC § 2–714. See Official Comment to section 2–714; *Barry & Sewall Industrial Supply Co. v. Metal–Prep of Houston, Inc.*, 912 F.2d 252, 257 (8th Cir. 1990). Moreover, although section 2–515 functions much like a rule of pretrial discovery, it is operative only before suit is filed. As soon as a suit is filed, the section is superseded by the rules of procedure governing discovery. *Fenway Cambridge Motor Hotel, Inc. v. American Contract Designers, Inc.*, 39 UCC Reporting Service 1263, 1984 WL 178962 (D.Mass.1984). This means that when Cousin had to decide whether to invoke its rights under section 2–515, it could not know, under Menard's interpretation of the section, whether it *had* any rights, because it did not know under what legal theory Menard would proceed in the parties' dispute. It is unlikely that the draftsmen wanted the use of the provision to be attended with so much uncertainty or to invite so much gamesmanship.

We conclude that Cousin had a right of inspection under section 2–515 even though Menard was not attempting to reject the goods in dispute or revoke its acceptance of them. We also believe that the jury was entitled to reject the argument that Cousin waived its right of inspection. It is true that the contract entitled Menard to destroy any defective or returned goods. Since the goods in question had little value, especially relative to their weight, the destruction option made a lot more sense than requiring that the goods be returned to Cousin or that Menard document the problem with every returned item. That is all that the parts of the contract on which Menard relies are about. They do not bear on the rights of either party in the event of a dispute. Menard argues that no dispute could arise because Cousin had given it carte blanche to destroy its goods. But Cousin did not agree that Menard could dispose of goods that were *not* defective or returned, and since this might happen, Cousin should not be taken to have disarmed itself in advance from being able to investigate whether it might have happened. In fact Menard, very averse to paperwork, based its deductions from Cousin's invoices not on actual returns but on "anticipated" returns. This it had no clear right to do and it certainly had no right to retain these monies if its "anticipations" turned out to be excessive, a matter that Cousin was entitled to investigate with the aid of its statutory right to inspect.

Menard argues rather more practically that given the weight and quantity of the goods it simply was infeasible for it to seg-

regate and store all the returns. But we take this to mean only that it thinks that Cousin should have paid for the expense of inspection. Cousin *concedes* that Menard was entitled to charge back to it the reasonable expense of storage necessary to permit inspection of the returned goods, subject to reimbursement by Menard should the inspection reveal a breach of the contract. We do not know on what the concession is based. The issue is not addressed in any provision of the Code or in any case. In any event, we cannot attach much significance to the concession, conditioned as it is on there being a right to reimbursement if Cousin wins (as it has done)—for there may not be any such right.

 The cost of inspection-related storage is an expense incidental to dispute resolution, and such costs, under the American rule governing litigation expenses other than statutory costs (copying costs, filing fees, and the like), are borne by the party that incurs them rather than being shifted to the winning party. *Autotrol Corp. v. Continental Water Systems Corp.,* 918 F.2d 689, 695 (7th Cir.1990). They thus are not recoverable as incidental or consequential damages under UCC § 2–715. *Bazzini v. Garrant,* 116 Misc.2d 119, 455 N.Y.S.2d 77, 79 (Dist.Ct. 1982). The American rule is merely a default rule; it is often changed by statute; but so far as we have been able to determine no statute alters the rule for the class of cases to which this litigation belongs. If section 2–515 had a broader domain than dispute resolution, the American rule might not come into play; but it appears not to. It is true, as we noted earlier, that had the returned goods not been destroyed by Menard, Cousin might have been able to use them, if they were indeed defective, to obtain compensation from the manufacturer of the goods, even if Cousin had had no dispute with Menard and even if its claim against the manufacturer was accepted rather than disputed. But whether, in light of the language of section 2–515 and the Official Comment, a party to a contract for the sale of goods can demand inspection of the goods even though there is no dispute between the parties—even though inspection is sought solely because of a potential dispute with a third

party—is highly doubtful. We need not pursue the issue, on which we cannot find any authority, just as we need not decide whether Cousin would in fact be liable for the cost of storage, another issue on which there is no law (so prudent parties will allocate the cost in the contract if as in this case it might be substantial). No matter. Menard should have retained the goods and tried to charge the expense of doing so to Cousin. In failing to retain the goods after being notified that Cousin was invoking its rights under section 2–515, Menard violated Cousin's statutory right, and for the reasons explained earlier it cannot complain about the size of the verdict.

AFFIRMED.