**Martin J. NEELY, Petitioner,**

v.

**BENEFITS REVIEW BOARD, et al., Respondents.**

No. 96–2299.

United States Court of Appeals, First Circuit.

Heard July 28, 1997.

Decided March 24, 1998.

---

Gary A. Gabree, with whom Stinson, Lupton, Weiss & Gabree, P.A., Bath, ME, was on brief, for petitioner.

Joshua T. Gillelan II, Senior Attorney, Division of Employee Benefits, Washington, DC, with whom J. Davitt McAteer, Acting Solicitor of Labor, and Carol A. De Deo, Associate Solicitor, Washington, DC, were on brief, for respondent Director, Office of Workers' Compensation.

Stephen Hessert, with whom Norman, Hanson & DeTroy, Portland, ME, was on brief for respondent Bath Iron Works Corporation.

Before BOUDIN, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and POLLAK,** Senior District Judge.

BOUDIN, Circuit Judge.

Martin Neely suffered a back injury while employed by Bath Iron Works ("Bath") and sought compensation under the Longshore and Harborworkers' Compensation Act, 33 U.S.C. § 901 *et seq.* ("The Longshore Act" or the "Act"). Compensation was denied on the ground that Bath had voluntarily paid in full for Neely's temporary disability and for all outstanding medical expenses. Neely, supported by the Secretary of Labor, seeks review in this court.

---

* Of the Eighth Circuit, sitting by designation.

** Of the Eastern District of Pennsylvania, sitting by designation.

The pertinent facts are undisputed. Bath maintains a shipyard for construction and repair in Bath, Maine. Neely, while employed as a tinsmith, suffered back injuries on September 29 and 30, 1992. Neely incurred some medical expenses and was out of work for about two weeks in October 1992, but then returned to work. Bath paid Neely compensation for his temporary disability and for his medical expenses.

There have been no further periods of disability due to the injury. However, under the Longshore Act, the compensation regime is one of continuing protection: subject to statute of limitations provisions, 33 U.S.C. § 913, employer liability for a covered accident can involve ongoing responsibility to pay compensation where partial or complete disability occurs or reoccurs, and for medical expenses as they accumulate. 33 U.S.C. §§ 907, 908.

In October 1992, Bath filed a notice of injury with the federal Office of Workers' Compensation Programs, the agency within the Labor Department that administers workers' compensation under the Longshore Act.[1] Bath also filed a notice that it was controverting Neely's right to compensation under that statute, see 33 U.S.C. § 914(d), because "Claimant [is] pursuing [compensation] under State Act." It is common for workers like Neely to be protected both by the federal statute and by Maine's counterpart workers' compensation law. See, e.g., Reich v. Bath Iron Works Corp., 42 F.3d 74, 76 (1st Cir.1994).

Then, on May 4, 1994, Neely filed an "Employee's Claim for Compensation" with the Labor Department on account of the same injury and on June 9, 1994, Bath filed a new notice of contravention containing the following, apparently boilerplate, response: "Bath ... disputes the fact of injury, nature and extent of disability, timeliness of filing, and responsible carrier." It appears that Bath had continued to pay ongoing medical expenses for Neely's injury while refusing to acknowledge to Neely that he was entitled to such payments under the Longshore Act.

After informal proceedings failed to resolve the dispute, the case was referred to an administrative law judge. See 33 U.S.C. § 919(c), (d). At the start of the hearing, Neely agreed that he was not seeking a monetary award but said that he wanted an order requiring Bath to file forms with the Labor Department to acknowledge "that payments in fact made were as much under the Longshore Act as under the state act." The Longshore Act requires the employer to file notices upon making a first payment of compensation under the Act, or suspending payment, or making a final payment. 33 U.S.C. §§ 914(c),(g).

In response, Bath told the ALJ—contrary to its earlier filings—that it did not now dispute that Neely and his accident were covered by the Longshore Act. However, Bath said correctly that it was entitled to a credit against Longshore Act liability for payments made for the same injury under state law. 33 U.S.C. § 903(e). Therefore, it argued it should not be required to file additional forms suggesting that benefits were due under the Longshore Act.

The ALJ then ruled that Neely was not entitled to relief. He said that the payments had been made under state law, so that no forms had to be filed under the Longshore Act. He also said that Neely was not prejudiced because Neely's claim of compensation tolled the statute of limitations. Neely appealed the decision to the Benefits Review Board, which sustained the ALJ, quoting language from our Reich decision that payments made under the Maine statute "erase[ ] ... liability under the federal statute." 42 F.3d at 76.

Neely then appealed to this court, this time eliciting a brief in partial support of his position filed by the Solicitor of the Labor Department, on behalf of the Director of the Office of Workers Compensation Programs. Recasting the case somewhat, the Solicitor urged that Neely was entitled to an order

1. The statute refers to the Secretary of Labor as responsible for administering the Act, 33 U.S.C. § 939, and to Deputy Commissioners, id. § 940, as subordinate administrators. But the Secretary has delegated authority to the Director of the Office of Workers Compensation Programs, and local administration is conducted by district directors.

determining that his injury was covered by the Act but not to an order requiring Bath to file the forms in question. Bath defended the Benefits Review Board in full, adding tersely that no case or controversy existed and that Neely's request was essentially one for "an advisory opinion."

■ We obtained supplemental memoranda on the jurisdictional question and now turn to the issues on appeal. At the outset, a majority of the panel concludes that a case or controversy exists under Article III of the Constitution. For Article III purposes, it does not matter whether we look to Neely's original request that notices be filed or to the Solicitor's argument for a declaratory ruling: in substance both seek a ruling that Neely's accident was covered by the Act.

The "case or controversy" label is used to embrace a number of related but different problems of judicial authority, including the requirement of a concrete dispute between adversaries, standing, ripeness, mootness and limitations relating to political questions. *See* E. Chemerinsky, *Federal Jurisdiction* § 2.1, at 41 (1989). In this case, there are adverse parties; Neely has standing as to his coverage under the Act; the coverage issue will not be narrowed or illuminated ("ripened") by further events; and the issue certainly does not present a political question.

■ Rather, our concern is whether this is actually a "live" controversy or whether the likelihood of any practical effect from a ruling is so slight as to raise nothing more than a hypothetical question. *See Raines v. Byrd,* —— U.S. ——, ——, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849 (1997), *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). The absence of any request for a dollar award is not fatal; declaratory relief alone may be sought where it may have some meaningful effect. *See id.* But Article III requires some minimum likelihood that the relief

sought actually does or could matter. *See id.*[2]

In this instance it is undisputed that Neely suffered an injury severe enough to cause some temporary disability and medical treatment, that the disability abated, and that the medical treatment continued for a period. The ALJ decision tells us—without dispute from the employer—that Neely's filed claim alone has tolled the statute of limitations. Thus, a renewed disability traced to the same injury, or further medical expenses, could conceivably give rise to a further award under the federal statute.

Now, whether this will happen is uncertain, but it certainly could. Neely's was a back injury, an injury famously a source of recurring problems; and Neely's injury was not a trivial one since it involved two episodes of inability to work at all, albeit brief ones; also, his medical expenses are said to have continued thereafter, possibly up to the time that he filed his claim almost a year and a half after the initial disability. At the very least, Neely had some basis for fearing that he might have to make a further claim.

If he did make such a claim, the ruling now sought would remove from dispute the question whether his injury was a covered accident, a matter about which there are often quite difficult disputes. *See, e.g., Pittman Mechanical Contractors, Inc. v. Director, Office of Workers' Compensation Programs,* 35 F.3d 122, 123 (1994). Here, in fact, Bath disclaimed coverage when Neely filed his claim. Its later admissions before the ALJ would make further dispute by Bath more difficult but not necessarily impossible.

Thus, what Neely would gain from a ruling now amounts to this: the emotional assurance of coverage; a resolution of the issue—if Bath chooses to dispute it—while memories are fresh and records easily available; and administrative speed, in the event of a future claim by Neely based on the same accident, so long as coverage was the only

---

**2.** These requirements pertain to jurisdiction of federal courts and do not necessarily apply to Executive Branch agencies. *See, e.g., North Carolina Utilities Comm'n v. FCC,* 537 F.2d 787, 791 (4th Cir.), *cert. denied,* 429 U.S. 1027, 97 S.Ct. 651, 50 L.Ed.2d 631 (1976); *Tennessee Gas Pipe-*

*line Co. v. Federal Power Comm'n,* 606 F.2d 1373, 1380 (D.C.Cir.1979). However, we are presently concerned with our own jurisdiction and, given our conclusion, need not reach the interesting question of how to view the matter if the agency could act but we could not.

issue in dispute. The Solicitor tells us that ALJ dockets are crowded and that any dispute about a claim can delay resolution for many months, if not more.

These are not overwhelming effects. They are surely less than the practical consequences of a declaratory ruling about insurance coverage, in advance of an incident, where a ruling against coverage will induce the insured to seek new coverage or take some other action. *See, e.g., Wisconsin Power & Light Co. v. Century Indemnity Co.,* 130 F.3d 787, 792–93 (7th Cir.1997). But they are also not trivial advantages and might seem significant to a worker with limited resources faced with pursuing an administrative claim against an experienced corporate opponent. We think that there is enough at stake for Neely to permit the case to proceed under Article III.

■ This brings us to the merits. The relief originally sought by Neely, it will be recalled, was the enforcement of provisions in 33 U.S.C. § 914 that require the employer to file forms with the Labor Department at the time the first payment is made, 33 U.S.C. § 914(c), and on the suspension or termination of compensation, 33 U.S.C. § 914(c), (g). The purpose of these provisions appears to be to permit the Department of Labor to keep track of payments and to take remedial action on its own initiative, as it is allowed to do. 33 U.S.C. § 914(h).

■ We are inclined to agree with the Solicitor that these filing provisions are not designed to confer rights on the employee or to be enforced by him or her. The employee, after all, knows whether compensation payments have started or ceased. Further, the filing of the forms would not itself settle coverage definitively in Neely's favor; they might be an admission but Neely already has that from the ALJ conference. What Neely really needs—to protect against later disputes as to coverage—is a declaration of coverage.

The Solicitor says that such an order is supported by statutory language and by court and administrative precedent. The statutory argument is based on requirements that a hearing "shall" be ordered on disputed claims, 33 U.S.C. § 919(c), and that the ALJ "shall" file an order "rejecting the claim or making the award (referred to in this chapter as a compensation order) ...," " 33 U.S.C. § 919(e). But whether a request for a declaratory ruling as to coverage falls within the rubric of "claim for compensation," or is otherwise appropriate, is not answered by referring to repeated uses of the term "shall."

Nor do we think much help is provided by *Ingalls Shipbuilding v. Asbestos Health Claimants,* 17 F.3d 130 (5th Cir.1994), the main judicial precedent relied on by the Solicitor. There, the district director refused to refer numerous filed asbestos claims to an ALJ for resolution. On suit by the employer, the court of appeals ruled that the district director had a mandatory obligation to transfer claims to the administrative law judge on request of "any interested party." *Id.* at 133 (quoting 33 U.S.C. § 919(c)). But *Ingalls* did not decide whether and when an ALJ could or must issue declaratory orders to address coverage issues.[3].

Finally, the administrative precedent cited is weak. *Kinnes v. General Dynamics Corp.,* 25 B.R.B.S. 311 (1992), sustained a federal proceeding filed after a state award where the former was for the purpose of securing "additional compensation." In the other case cited, *Hoodye v. Empire/United Stevedores,* 23 B.R.B.S. 341 (1990), the employer who admitted that continuing disability payments were due to the employee sought to prevent entry of an award by admitting such liability in the course of the proceeding; in the present case there is no proven continuing disability, nor proof of any unpaid medical expenses.

Our problem is not one of ambiguity in the Act but of a typical gap in a complex statutory scheme. *See, e.g., United States v. Vak-*

---

3. Similarly, our own decision in *Reich* had nothing to do with the question now before us. The only liability "erased," perhaps an ill-chosen term, was liability to pay under the federal Act for losses already reimbursed under state law. Here, Neely is concerned with *future* losses based on the prior injury.

*nin,* 112 F.3d 579, 589 (1st Cir.1997). It is doubtful that Congress considered, or that its language was drafted to deal with, the relatively rare problem of the claimant who suffered an injury creating disability, was fully compensated for the disability, and was then interested in a declaratory ruling to guard against recurrence or further medical expenses. Indeed, the Solicitor's brief tells us that no legislative history on the issue can be found, nor are we surprised.

The Secretary has rulemaking power, 33 U.S.C. § 939, but has not used it to close the gap in question (for example, by defining compensation orders to cover cases like this one). In this context, the omission is not fatal: most of the time, policy choices can be made by the agency either through rule making or adjudication. *See SEC v. Chenery Corp.,* 332 U.S. 194, 202–03, 67 S.Ct. 1575, 1580–81, 91 L.Ed. 1995 (1947). Here, however, the ALJ and the Benefits Review Board decided the issue the other way. And because of the peculiar structure of the Act, the Secretary and her delegate do not review individual decisions.

■■■■ One might ask why this should matter. Policy-making authority under the Longshore Act belongs to the Secretary, not to the ALJ or the Benefits Review Board. *See Wood v. United States Dep't of Labor,* 112 F.3d 592, 595 (1997). The Solicitor has told us, on behalf of the Secretary's policy-making delegate (the Director) that this kind of compensation order is proper. But substantial precedent, backed by the leading treatise on administrative law, tells us that briefs submitted in litigation are not the proper place for agencies to "make policy." [4]

Whether this should always be so might be debated. To be sure, on matters peculiarly within the knowledge of the parties, an adjudicatory finding—however imbued with policy considerations—might be sometimes unfair unless and until the parties had been heard. In other instances, one might have some doubt whether the view expressed informally through a brief was really that of the policy maker (as opposed to counsel). It

is not apparent that any of the reasons have much bearing on the present case.

In all events, the Supreme Court, has been willing to treat the views of the Secretary of Labor expressed in a brief as entitled to some deference, even though not the full deference due under the *Chevron* doctrine, *see Chevron U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to a policy-making judgment made in the course of a formal proceeding. *See Metropolitan Stevedore Co. v. Rambo,* —— U.S. ——, ——, 117 S.Ct. 1953, 1962, 138 L.Ed.2d 327 (1997); *see also Massachusetts v. FDIC,* 102 F.3d 615, 621 (1st Cir.1996) (stating that "less formal agency determinations may be accorded something less than full *Chevron* deference").

*Rambo* is also pertinent to the merits of the present case. There, a longshoreman injured on the job was awarded permanent, partial disability but later, payments were discontinued because his earnings had increased beyond his pre-injury wages. The employee sought a continuing award of nominal compensation to toll the statute of limitations and permit a future claim if his wages declined and resumed disability payments might otherwise have been proper. 33 U.S.C. § 913(b)(2) (final sentence). The ALJ refused.

Ultimately, the Supreme Court held that such award of nominal compensation could and should be entered, assuming "a significant potential that the injury will cause diminished capacity under future conditions." *Id.* at ——, 117 S.Ct. at 1963. *Rambo* is thus authority for a compensation order without any actual harm presently uncompensated. Further, the nominal compensation order in *Rambo* undercut the statute of limitations and, in that sense, was more in tension with an express provision of the Act than is the kind of relief sought by Neely in this case.

Of course, the context in *Rambo* was somewhat different. The consequences for a worker there, in the absence of nominal compensation, was a risk of being completely

---

**4.** *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212, 109 S.Ct. 468, 473–74, 102 L.Ed.2d 493 (1988); *Massachusetts v. Blackstone Valley*

*Elec. Co.,* 67 F.3d 981, 991 (1st Cir.1995); 1 K. Davis & R. Pierce, Jr., *Administrative Law Treatise* § 3.5, at 120 (3d ed.1994).

foreclosed from future recovery by the statute of limitations. Here, the statute is supposedly tolled, and we are talking only about administrative inconvenience and delay if relief now is denied. About the most one can say is that *Rambo* removes any statutory bar to declaratory compensation orders and, in an analogous situation, encouraged a protective approach somewhat akin to what the Solicitor urges here.

*Rambo* required, as a condition of nominal compensation, that the claimant show "a significant possibility" of future disability based on the past injury. —— U.S. at ——, 117 S.Ct. at 1964. We think that the declaratory relief sought here is sufficiently similar that the same showing, as to either disability or expenses, should be imposed on Neely before the employer is required to litigate or the ALJ to resolve an issue of disputed coverage. On remand, Bath can insist upon such a showing as a part of Neely's claim.

The Secretary is free to fine-tune or adjust such requirements by regulation. The Supreme Court in *Rambo* made clear that the Secretary does have rule-making authority in this realm. *See* —— U.S. at ——, 117 S.Ct. at 1962. Its exercise would give guidance to litigants, ALJs and the Review Board and would save time, expense and confusion in future court proceedings.

The decision of the Benefits Review Board is *vacated,* and the matter *remanded* for further proceedings consistent with this decision. No costs will be awarded to any party.

POLLAK, Senior District Judge, concurring in part and dissenting in part.

I regret that I am not able fully to subscribe to the court's eminently reasonable opinion. I agree that it makes good sense to adopt the generous construction of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 901 *et seq.* ("Longshore Act"), contended for by the Secretary of Labor. Under the regime espoused by the Secretary, a worker who has, without having filed a claim with the Office of Workers' Compensation Programs ("OWCP"), actually received compensation for an injury assertedly compensable under the Longshore Act would have standing to ask the OWCP for a formal declaration of coverage. In the event that the worker should at some later time suffer a disability alleged to be a recurrence of, or derivative from, the original injury, the existence of the declaration of coverage would obviate litigation of the coverage issue at a point in the future when some witnesses might have disappeared and the memories of available witnesses might have dimmed. The court—correctly, in my view—reads the Longshore Act as not *mandating* the regime advocated by the Secretary; but the court also—again correctly, in my view—finds, in effect, that the Secretary has made a persuasive case that the regime would be a salutary elaboration of the Act's prescribed procedures, and that measured judicial respect for the Secretary's policy-making responsibilities counsels acquiescence in the Secretary's position. But to all this the court adds a significant caveat—one which I also agree with—namely, that a claimant is not entitled to a declaration of coverage unless the claimant is able to establish "'a significant possibility' of future disability based on the past injury."

Given my agreement with the core of the court's opinion, what is it I disagree with? My disagreement has nothing to do with the court's analysis of the circumstances in which the issuance of a declaration of coverage is appropriate. My disagreement with the court is with its *decision*—namely, that the order of the Benefits Review Board is to be vacated and the case remanded to the Board with a view, presumably, to a further remand to Administrative Law Judge Tureck with instructions to entertain a motion to be submitted by Neely for a declaration of coverage. This would be the proper disposition of Neely's petition for review if Neely had sought a declaration of coverage from Judge Tureck and had been turned down, and had then on appeal sought the same relief from the Benefits Review Board and again been turned down, and had, finally, come to this court on petition for review seeking judicial vindication of a procedural claim incorrectly held to be non-cognizable at two levels of administrative adjudication. But that is not what happened.

What did happen is this:

As the court's opinion explains, Neely, an employee of Bath Iron Works, suffered work-related back injuries on September 29 and 30, 1992. On October 1 Bath received word that Neely had hurt his back, and on that date Bath authorized Neely to seek treatment from a physician. On October 2 Bath filed a report of injury under the Longshore Act with the OWCP. Four days later, on October 6, Bath filed a "Notice of Controversion of Right to Compensation", the ground of controversion being "Claimant pursuing under State Act." Because of his injuries, Neely was off work from October 5 to October 11, and from October 12 through October 18. Bath, without delay, (1) paid compensation for Neely's two sequential weeks of disability, and (2) took care of Neely's medical expenses.

A year and half later, in the spring of 1994, Neely filed an "Employee's Claim for Compensation" under the Longshore Act; Bath promptly countered with what the court rightly characterizes as an "apparently boilerplate" controversion, disputing all aspects of liability. When the matter came before Judge Tureck in the summer of 1995, Bath's attorney, Stephen Hessert, presented a more coherent legal position on his client's behalf:

> Bath Iron Works paid various periods of temporary total disability benefits for the injury under the State of Maine Workers' Compensation Act, and they paid all outstanding medical bills. As far as I know, there is no claim for additional monetary benefits.

> A first report was filed under the Longshore Act, but nothing else was filed under the Longshore Act. I think the issue is whether Mr. Gabree is entitled—or his client is entitled to some sort of protective decree....

Gary Gabree, Neely's attorney, responded:

> I generally agree with what Mr. Hessert has said.... There really is no claim for

additional benefits. We are seeking a protective decree at this time....

Judge Tureck asked:

> What do you mean by a protective decree?....

Mr. Gabree replied:

> .... I think what we're—the real dispute here, I guess, is the reluctance of the employer to file the LS –206 or the 208[5] acknowledging that payments have been made under the Longshore Act. I think 14(g) [33 U.S.C. 914(g) ] requires that, and down the road, I think that could be a potential problem.

ADMINISTRATIVE LAW JUDGE:

> So what is it you want me to do here?

MR. GABREE:

> Well, I mean, if we could—I'd settle for an order requiring the employer to file the LS–206, 208, acknowledging that this claim is compensable under the Longshore Act, and that payments in fact made were as much under the Longshore Act as under the state act. I think it comes down to a choice of remedy, and I believe that's the employee's choice, not the employer's.

Judge Tureck then interjected: "Okay, are any benefits ongoing right now?" After being assured by Mr. Gabree that "all [benefits] have been paid, in the amounts that we would be seeking," and indeed that "the payments were made contemporaneously" [i.e., in 1992], Judge Tureck put a further question:

> Assuming I went ahead and issued the kind of order that you want required the employer to file the appropriate forms, what would you do with them? I mean, at this point in time, what effect would it have even if they acknowledged the fact that this was a potential Longshore Act claim?

MR. HESSERT:

> I can tell you—do you mind if I respond to that?

MR. GABREE:

> No, go ahead.

---

**5.** The terms "LS–206" and "LS208" apparently are shorthand lingo for forms on which, under the Longshore Act, an employer is required to notify the OWCP of (1) an initial compensation payment, or a suspension of compensation payments, 33 U.S.C. 914(c), or (2) a final payment of compensation. 33 U.S.C. 914(g).

MR. HESSERT:

From my client's point of view, what this is about is attorney's fees. We are in a situation where cases like this happen; Bath accepts responsibility for them; they pay the benefits; file the federal first report; file the state first report; and make payments. Mr. Gabree brings a, you know, asks for Longshore filed, the 206 and 208, and then asks for an attorney's fee based on the assumption that somehow provides a benefit to his client. . . .

MR. GABREE:

Conversely, Your Honor, it seems to be a relatively simple matter to file the LS–206 or 208, and it also seems to be the appropriate course in claims that are clearly made under the Longshore Act once payments are made, so that the employer's reluctance to do so indicates something to me, and while I admit that we have discussed and I have kicked around for many hours what apparent advantage it gives us, and I'm prepared to address that issue in my brief, I can say that it's not a particularly strong argument, and there isn't a lot.

There is a possibility that some of the case law might support—it might strengthen our case in future cases if and when we seek to pursue this claim and are confronted with the failure to prosecute defense arguably, and as far as the fees issue goes, perhaps this is to some degree a reaction to the administrative requirements we face in dealing with the U.S. Department of Labor. I have in the past run into problems when there is an appropriate fee to be made, in getting that fee paid, because the employer fails to file the 206 or the 208 when clearly the work was done under the Longshore Act, but the additional step of filing that paperwork seems to be essential for the OWCP to award us any fees for whatever we've achieved for a client up to that point. I say all this, recognizing that the additional work we do in this case in presenting this issue to you hopefully is a one-time deal, and I don't necessarily hold out any great hopes for making a lot of money on this case.

As the court notes in its opinion, Judge Tureck was not persuaded that he should direct Bath to file LS–206 and LS–208. Judge Tureck ruled that because Bath had made its payments under Maine law the Longshore Act's requirement that an employer file notices relating to compensation payments were without application: "nothing in the Act or the regulations requires an employer to file notices of payment or termination of compensation which was not paid pursuant to the Act." In declining to order Bath to file the forms, Judge Tureck reached the right result but for the wrong reason. The correct reason is the one which was urged upon this court in the brief of the Solicitor of Labor—"The reporting requirements are intended to serve *administrative* purposes in the district director's and Director's offices—neither to establish nor to safeguard the claimant's right to benefits"— and which this court very sensibly accepts in its opinion: "[T]hese filing provisions are not designed to confer rights on the employee or to be enforced by him or her."

On appeal to the Benefits Review Board, Neely evidently hewed to the line taken before Judge Tureck. The Board, in its *per curiam* affirmance, summarized Neely's contentions as follows:

Claimant contends the administrative law judge erred in failing to find that: his claim is compensable under the Act; payments made under the Maine Act are also required under the Longshore Act; employer is liable for these payments and should be ordered to file the appropriate forms and acknowledge its liability under the Act; and employer is liable for payment of the Section 14(g) penalty[6] and for an attorney's fee.

The Board's analysis of the Longshore Act was in accord with Judge Tureck's: "[P]ayments made under another compensation law need not be reported to the district director

6. This would appear to be a reference to the provision in 33 U.S.C. 914(g) that, in the event that an employer fails to file a notice of a final payment of compensation within sixteen days of such payment, "the Secretary shall assess against such employer a civil penalty in the amount of $100."

on forms provided by the Secretary under this Act. Therefore, we agree with the administrative law judge's conclusion that payments made under the Maine Act do not compel the employer to file forms LS–206 or LS–208 in compliance with Section 14 of the Longshore Act." (Like the administrative law judge, the Board reached the right result, albeit for the wrong reason). In a footnote, the Board opined: "In light of our decision herein, we need not address claimant's argument regarding counsel's entitlement to an attorney's fee. However, we note that as claimant has neither sought nor been awarded additional benefits beyond those voluntarily paid by employer, counsel is not entitled to a fee."

In his petition for review in this court Neely has again advanced the arguments which Judge Tureck and the Benefits Review Board found unavailing. In his "Summary of Argument" Neely states his contentions in three paragraphs, the gist of which is as follows: (1) "The decision below improperly denies the employee the right to choose his remedy and the right to pursue his claim under the Longshore and Harbor Workers' Compensation Law...." (2) "Since the parties stipulated to the essential elements of the Longshore claim and the employer voluntarily paid comparable benefits under the state workers' compensation law, it was error for the administrative law judge and the Benefits Review Board below to hold otherwise. Accordingly, the employer's failure to file the paperwork acknowledging their responsibility under 914(g) of the Longshore and Harbor Workers' Compensation Act subjects them to the penalties *mandated* by that section." (3) "Lastly, under the reasoning in *Kinnes* [*v. General Dynamics Corp.*, 25 B.R.B.S. 311 (1992) ], the employee has successfully established that he is entitled to an award and consequently has prevailed in this proceeding. Therefore he has successfully prosecuted this claim and is entitled to an attorney fee."

This completes my précis of the procedural history of this case up to the point at which it appeared on this court's docket. I have can-vassed this procedural history in what may arguably be regarded as superfluous (and hyper-tedious) detail with a view to making a single point. At no point in the proceedings before the administrative law judge or the Benefits Review Board, or in his opening brief in this court, did Neely present the contention—namely, that he might at some point in the future suffer a disability linked to his 1992 disability, and that he was therefore entitled to a present determination of Bath's liability under the Longshore Act— acquiescence in which is the centerpiece of today's opinion. But because the Benefits Review Board—following the lead taken by Judge Tureck—did not see the merit of a contention not advanced, the Board's decision is today vacated and this case remanded for further proceedings harmonious with today's wisdom.

A thoughtful reader might well break in at this point to tell me that my concerns are both finicky and misdirected—that what has happened here is an instance of the not-all-that unusual scenario in which a legal argument that had not come into focus, or had not even been conceived, at earlier stages of the litigation, emerges (whether through the efforts of counsel or of the court) and carries the day on appeal. That perception of what has happened here may be thought to be implicit in the court's observation that the entry into this case of the Solicitor of Labor, "in partial support of [Neely's] position" in this court, was reflected in the Solicitor's "[r]ecasting the case somewhat." But the Solicitor's impressive "recasting" was not simply a rethinking of what arguments should be deployed to yield a result that had eluded Neely before Judge Tureck and the Board. The "recasting" was a *restructuring* of the case designed to achieve a result Neely had not sought. The Solicitor has, in effect, undertaken to substitute a new cause of action for the non-cognizable one Neely vainly deployed.[7] The Solicitor's advocacy has been of a high order, as is demonstrated by the fact that this court has, in its well-reasoned opinion, accepted the

---

7. Not surprisingly, Neely has in his "Supplementary Memorandum" in this court embraced the Solicitor's position; but that hardly serves to work an *ex post* conversion of the claims put forward by Neely prior to the filing of the Solicitor's opening brief.

bulk of the Solicitor's arguments. But even the Solicitor's alchemy is insufficient to turn a sow's ear into a silk purse. I have no quarrel with the proposition that a future claimant should be able to seek a declaration of coverage on the terms marked out by the court. But I am not persuaded that the new cause of action should redound to the benefit of the claimant who is before this court.

In noting that the court's opinion has accepted "the bulk" of the arguments made by the Solicitor, I think it appropriate to point out that in one crucial particular the court has circumscribed the new cause of action, imposing a limitation not expressly called for by the Solicitor. In insisting that one who seeks a declaration of coverage "show a 'significant possibility' of future disability based on the past injury," the court has built into the new cause of action an element of objectively demonstrable potential harm—harm which a declaration of coverage may at least soften the impact of. The addition of this ingredient probably suffices to make the new cause of action a sufficiently ripe case or controversy so as to be litigable in an Article III court, such as this one.[8] However, Neely's case, as it comes to this court, does not even prima facie fall within the stated limitation. Nothing in the record lends credence to the notion that Neely might some day suffer a disability traceable in any way to the 1992 episode. The only wisp of potential nexus is to be found in the court's observation that "Neely's was a back injury, an injury famously a source of recurring problems." With all respect, I do not think that a judicial observation of this sort has sufficient grounding to elevate a conjecture into a controversy.

In sum, I am in accord with the court's explication of a new cause of action under the Longshore Act—a cause of action that seeks a declaration of coverage as the court has defined such a declaration. But I am not persuaded that Martin Neely, having never sought a declaration of this kind with respect to his 1992 disability, should now acquire the opportunity to drag Bath into litigation all over again.

---

8. Like the court, I think it unnecessary to consider the questions that might be posed by a regime in which administrative law judges and the Benefits Review Board were vested with authority to entertain claims not bounded by the Article III case-or-controversy constraints. See footnote 2 of the court's opinion.