**BATH IRON WORKS,**
et al., Petitioners,

v.

**Harold J. BROWN, Jr., et**
**al., Respondents.**

No. 98–2010.

United States Court of Appeals,
First Circuit.

Heard Sept. 8, 1999.

Decided Oct. 8, 1999.

Kevin M. Gillis, with whom Troubh, Heisler & Piampiano, P.A. was on brief, for petitioners.

G. William Higbee, with whom McTeague, Higbee, MacAdam, Case, Cohen & Whitney, PA was on brief, for respondent Harold J. Brown.

Stephen Hessert, with whom Norman, Hanson &. DeTroy was on brief, for respondent Liberty Mutual Insurance Company.

Laura J. Stomski, with whom Henry L. Solano, Solicitor of Labor, Carol A. De Deo, Associate Solicitor for Employee Benefits, and Samuel J. Oshinsky, Counsel for Longshore, were on brief, for respondent Director, Office of Workers' Compensation Programs, U.S. Department of Labor.

Before STAHL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge,* and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

Harold J. Brown, Jr., now nearly 78 years old, worked at shipbuilding facilities owned by the Bath Iron Works (BIW) for 43 years, from 1941 to 1984. Until 1978 he worked at the BIW shipyard in Bath, Maine, a facility covered by the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. From 1978 to 1984, he worked at BIW's Hardings plant, a facility the Benefits Review Board (BRB) determined was not covered by the Act.

Brown obtained an award of benefits under the Act for hearing loss, an occupational disease resulting from years of exposure to loud noises. He received a lump sum payment in 1986; his present interest in this case is in continuing health coverage for his disability, and more specifically, that BIW's insurer pay for hearing aids as needed. BIW has two insurers involved: Commercial Union Insurance Companies, which provided coverage from January 1, 1963 to February 28, 1981, and Liberty Mutual Insurance Company, which provided coverage from March 1, 1981 to August 31, 1986. Liberty Mutual paid the lump sum award and looks to Commercial Union for reimbursement. Commercial Union, to its credit, has informed us that it will reimburse Liberty Mutual if the order awarding benefits is upheld. This petition for review by BIW and Commercial Union concerns whether Brown should have received benefits under the Act.

## I

This case has consumed more than 16 years. The original claim for compensa-

---

* Of the Eighth Circuit, sitting by designation.

tion was filed on July 22, 1983, and the matter has been before three different Administrative Law Judges (ALJs) and has been to the BRB four times. The basic attack mounted by Commercial Union and BIW is that the second ALJ found, on substantial evidence, that Brown failed to produce credible evidence of any hearing loss during the covered period at the shipyard and that the BRB was not free to disturb that ruling. Brown disagrees with the second ALJ's conclusion. He argues that the first ALJ found, on substantial evidence, both exposure to loud noise and hearing loss during the covered period and that the BRB's order should be affirmed. Commercial Union agrees that there was such exposure and says that while there was substantial evidence to support a finding of hearing loss during the covered period, no such finding was in fact made and that therefore the second ALJ's finding was the controlling one.

■ This court reviews the BRB's decision on legal issues de novo and determines whether the Board adhered to the "substantial evidence" standard when it reviewed the ALJ's factual findings. *See Barker v. United States Dep't of Labor*, 138 F.3d 431, 434 (1st Cir.1998).

We decide this case on the grounds argued by Brown: the first ALJ found that Brown had adduced evidence sufficient to make out a prima facie case as to his hearing loss during his employment at the shipyard and, consequently, to invoke the presumption of liability in 33 U.S.C. § 920(a). The employer did not rebut the presumption, and the BRB correctly determined that substantial evidence supported the first ALJ's determination. An explanation of our reasoning benefits from a description, shortened and focused, of the protracted prior proceedings.

## II

On July 22, 1983, Brown filed a Claim for Compensation with the Office of Workers' Compensation, U.S. Department of Labor. Since Brown and BIW could not agree on a settlement, the dispute went before an ALJ of the Department of Labor. On June 11, 1986, after the only evidentiary hearing held in this matter, ALJ Glennon awarded Brown benefits for a 39.6% binaural hearing loss based on expert testimony and audiograms taken in 1955, 1967, and 1983. The ALJ also held that the Hardings facility was a covered situs under the Act and that Liberty Mutual, as the carrier at the time of the last exposure, was liable for payment of the benefits. Liberty Mutual appealed this decision to the BRB. On July 31, 1989, the BRB reversed the ALJ. The Board determined that the Hardings facility was not a covered situs under the Act and, therefore, the date of last covered exposure was April 17, 1978, when Brown last worked at the Bath facility. Consequently, the carrier responsible for Brown's benefits was Commercial Union. The Board also decided that "[a]ggravation of a covered injury occurring after termination of covered longshore employment is not compensable under the Act," under *Leach v. Thompson's Dairy, Inc.*, 13 Ben. Rev. Bd. Serv. (MB) 231 (1981). The BRB "remand[ed] the case for the ALJ to determine the extent of claimant's work-related hearing loss from 1941 until claimant transferred to the Hardings facility."

On February 21, 1990, a second ALJ (Shatz) found that the only reliable audiogram was conducted in 1983 (finding the audiograms done in 1955 and 1967 were unreliable), and that the 1983 audiogram could not be relied upon as an indicator of Brown's hearing loss in 1978 since Brown was exposed to loud noises at the Hardings plant after that date. Therefore, the second ALJ concluded, Brown "ha[d] not sustained his burden of proof[1] by credible

---

1. Respondents say the ALJ erred in placing this burden of proof on Brown. We do not reach that argument.

evidence that he sustained a hearing loss prior to being transferred in 1978 from the Employer's shipyard to the Hardings facility." As a result, the ALJ denied Brown's claim. Brown appealed ALJ Shatz's ruling and, on June 16, 1992, the BRB reversed. Relying on cases it had decided since the first appeal,[2] and contrary to its earlier holding that aggravation of a covered injury at a later non-covered site is not compensable, the Board held that Brown, as a matter of law, was entitled to compensation for his hearing loss as measured in 1983, because "the last covered employer is liable for an occupational disease regardless of subsequent exposure in non-covered employment."[3] Brown's claim was re-instated. Upon reconsideration, the Board reaffirmed this holding.

The BRB remanded the case to a third ALJ (Karst) to determine Brown's average applicable weekly wage. This the ALJ did on July 21, 1997, and BIW and Commercial .Union appealed again to the BRB, which, on August 13, 1998, upheld the ALJ in all respects.

2. See *Dubar v. Bath Iron Works Corp.*, 25 Ben. Rev. Bd. Serv. (MB) 5, 7 (1991) (relying on *Labbe, infra,* and awarding benefits based on a 1988 audiogram to a claimant whose covered employment ceased in 1971); *Labbe v. Bath Iron Works Corp.*, 24 Ben. Rev. Bd. Serv. (MB) 159, 162 (1991) ("In occupational disease cases, the last covered employer is liable for the totality of claimant's disability from the occupational disease, regardless of whether it was aggravated by subsequent non-covered employment.").

3. Commercial Union also contends that the BRB's decision violated the law of the case doctrine. That is a very dubious argument. See *Agostini v. Felton*, 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *United States v. Rivera–Martinez*, 931 F.2d 148, 150–51 (1st Cir.1991); *Lockert v. United States Dep't of Labor*, 867 F.2d 513, 517–18 (9th Cir.1989); *Containerfreight Transp. Co. v. ICC*, 651 F.2d 668, 671 (9th Cir.1981). Given our view of what was and was not resolved by the first ALJ, the doctrine is simply not applicable.

## III

█ The first ALJ had to decide the initial question of compensability and he decided it in Brown's favor. In order for an injury to be covered by the Act, the claimant must initially make out a prima facie case. That is, a claimant "must at least allege an injury that arose in the course of employment as well as out of employment." *U.S. Indus./Fed. Sheet Metal, Inc. v. Director, OWCP*, 455 U.S. 608, 615, 102 S.Ct. 1312, 71 L.Ed.2d 495 (1982); see also *Susoeff v. San Francisco Stevedoring Co.*, 19 Ben. Rev. Bd. Serv. (MB) 149, 151 (1986) (claimant must make a prima facie showing that he or she "sustained physical harm and that conditions existed at work which could have caused the harm"); cf. *Ramey v. Stevedoring Servs. of Am.*, 134 F.3d 954, 959 (9th Cir. 1998) (relying on *Susoeff*).

█ There was substantial evidence to support the finding of compensability, as Commercial Union concedes.[4] Brown worked at the shipyard as a shipfitter, surrounded by the din of chipping, riveting, sirens, and hammering. He testified

4. This circuit has not set a standard for how much evidence the claimant must show to make out a prima facie case,. and other circuits are in disagreement. Compare *Fulks v. Avondale Shipyards, Inc.*, 637 F.2d 1008, 1012 (5th Cir.1981) (refusing to set a de minimis standard for the duration of the exposure), *and Brown v. I.T.T./Continental Baking Co.*, 921 F.2d 289, 296 n. 6 (D.C.Cir.1990) (finding that "all the claimant need adduce is *some* evidence tending to establish the prerequisites of the presumption"), *with Todd Pacific Shipyards Corp. v. Director, OWCP*, 914 F.2d 1317, 1320 (9th Cir.1990) (holding that the claimant must show that the exposure was more than minimal and sufficient to cause the disease) (relying on *Todd Shipyards Corp. v. Black*, 717 F.2d 1280, 1286 (9th Cir.1983)), *and Ramey*, 134 F.3d at 959 (stating that the claimant must show that the "injurious exposure [is] *related* to the disability.") (quoting *Port of Portland v. Director, OWCP*, 932 F.2d 836, 840 (9th Cir.1991)) (internal quotation marks omitted). This case does not require any setting of standards.

that he noticed loss of hearing years earlier, during the period he worked at the shipyard. That testimony was not rebutted. He had three audiograms done, two in 1955 and one in 1967. Each showed that he suffered some hearing loss, although, oddly, the later one showed less hearing loss than the earlier ones.[5] Brown's testimony before Judge Glennon indicates that an audiogram was done in 1967 or before, after Brown noticed hearing loss. Brown testified that, as a result of a ringing in his ears he went to First Aid at the shipyard and had a hearing test done. He was told by the shipyard's medical department that the hearing loss was a hazard of the job and not much could be done about it. The medical testimony before the first ALJ also supports the conclusion that Brown had work-related hearing loss as a result of his employment at the Bath shipyard. This is sufficient to establish a prima facie case under the Act.

■ Once Brown made out his prima facie case, there was a presumption of liability. See 33 U.S.C. § 920(a) ("In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—(a) That the claimant comes within the provisions of this chapter.").

■ BIW could have rebutted this presumption in Brown's favor "by showing that exposure to injurious stimuli did not cause the harm" or "that [Brown] was exposed to injurious stimuli while performing work covered under the [LHWCA] for a subsequent employer." *Avondale Indus. Inc. v. Director, OWCP,* 977 F.2d 186, 190 (5th Cir.1992) (quoting *Susoeff,* 19 Ben. Rev. Bd. Serv. at 151) (internal quotation marks omitted); *see also General Ship Serv. v. Director, OWCP,* 938 F.2d 960, 961 (9th Cir.1991) (applying *Susoeff*). BIW had to produce "substantial evi-

dence" to support such a showing. *See Sprague v. Director, OWCP,* 688 F.2d 862, 865 (1st Cir.1982) (quoting § 920(a)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations and internal quotation marks omitted). If the presumption had been rebutted by BIW, it would have fallen out of the case, and Brown would have had to establish his burden based on the record as a whole. *See Del Vecchio v. Bowers,* 296 U.S. 280, 286–87, 56 S.Ct. 190, 80 L.Ed. 229 (1935); *accord Sprague,* 688 F.2d at 865. If, based on the record as a whole, the evidence had been evenly balanced between Brown and BIW, Brown would have lost. *See Director, OWCP v. Greenwich Collieries,* 512 U.S. 267, 281, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994).

■ Here, however, the presumption was not rebutted, and so Brown was properly awarded compensation. *See Bath Iron Works Corp. v. Director, OWCP,* 109 F.3d 53, 56 (1st Cir.1997). The first ALJ ruled (incorrectly, the BRB later said) that both of the BIW facilities where Brown worked were covered facilities; thus, his focus was not primarily on whether the injury was caused or aggravated at the shipyard or at the Hardings facility or both. But his opinion did determine both implicitly and explicitly that there was compensability for the period of employment at the shipyard. The ALJ viewed both insurers as potentially liable and visited the liability on Liberty Mutual because it was the last carrier (during the Hardings facility employment) and had not shown that there was no exposure to noise at Hardings.

The BRB understood the issues of compensability and overall liability of the shipyard to have already been resolved: "[I]t is undisputed that claimant's hearing loss is related to occupational noise exposure

---

5. The second ALJ found these audiograms to be totally unreliable. Even if so, Brown's testimony was that he suffered hearing loss, and the BRB concluded that the audiograms

may have been properly discredited as methods of measuring "the extent of the loss" but not that they were unreliable in showing that there was "some loss."

during claimant's employment ... from 1941 to 1984." Indeed, the issue remanded to the second ALJ was to determine *the extent* of liability by determining "the extent of claimant's work-related hearing loss from 1941 until claimant transferred to the Hardings facility." The second ALJ did not have the issue of compensability before him and, unsurprisingly, his opinion does not even refer to § 920(a). Thus, the issue of compensability was decided in Brown's favor and against the shipyard by the first ALJ, was affirmed by the BRB, is supported by substantial evidence, and is affirmed here.

There is one other party to this case and one other argument raised. The Director, Office of Workers' Compensation Programs, U.S. Department of Labor, argues that this case should turn on an extension of the well accepted "last employer rule." This extension has been, called the "last covered employer" or "last maritime employer" rule. *See* Junius C. McElveen, Jr. & Lawrence P. Postol, *Compensating Occupational Disease Victims Under the Longshoremen's and Harbor Workers' Compensation Act,* 32 Am. U.L.Rev. 717, 761–62 (1983).

■ The original "last employer" rule stems from the 1955 Second Circuit decision in *Travelers Insurance Co. v. Cardillo,* 225 F.2d 137 (2d Cir.1955), and is concerned with allocation of liability among employers and not with the question of compensability of the claimant. In *Cardillo,* the court noted that:

> The most difficult question presented by these cases is not that of a claimant's right to recover but rather that of determining upon whom shall devolve the burden of paying the tariff imposed by this socially desirable legislation. The nature of occupational diseases and the dearth of medical certainty with respect to the time that is required for them to develop and the permanence and extent of the resultant injurious effects at dif-

ferent stages of the diseases' evolution, make it exceedingly difficult, if not practically impossible, to correlate the progression of the disease with specific points in time or specific industrial experiences.

*Id.* at 144. Since the Act does not provide a method for allocating liability,[6] the court fashioned the last employer rule in order to do so. The rule states that:

> the employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, [is] liable for the full amount of the award.

*Id.* at 145.

This rule was both consistent with congressional intent and provided for administrative ease. The context in which the rule arises is where it has already been determined that the claimant has a right to recover, the issue is one of allocation, and the last employer covered by the Act *is* the last employer. This court utilized a version of a last employer rule in *Liberty Mutual Insurance Co. v. Commercial Union Insurance Co.,* 978 F.2d 750, 756 (1st Cir.1992) (holding date of disability rather than date of awareness of condition is key date for last employer rule).

The last employer rule fashioned by the *Cardillo* court is based on the assumption that "all employers will be the last employer a proportionate share of the time." *Cordero v. Triple A Mach. Shop,* 580 F.2d 1331, 1336 (9th Cir.1978). A more basic premise, unstated in *Cardillo,* is that, under the last employer rule, the employer assumes the risk when he hires an employee. This is similar to the torts rule that a tortfeasor takes its "victims" as it finds them. Consistent with this torts principle, one commentary notes that, at least with regard to some types of occupational inju-

---

6. Section 904(a) states: "[e]very employer shall be liable for and shall secure the pay-

ment to his employees of the compensation payable under ... this title."

ries, an employer could discover an employee's existing work related injury or illness "and could avoid or reduce liability by protecting the employee from further exposure." McElveen & Postol, *supra*, at 763.

The Director wants the courts to extend this last employer rule to impose liability on the last covered maritime employer where there is later exposure at a non-covered employer, as here. The "last maritime employer rule," unlike the "last employer rule," is driven by the fact that there is no jurisdiction over the last employer because the last employer is not covered by the Act. *See id.* at 762. Critics, however, have pointed out that such an extension is contrary to the rationale for the last employer rule: a last maritime or covered employer rule "undercut[s] the basic rationale of the last employer rule, that each employer will be the last employer a proportionate share of the time." McElveen & Postol, *supra*, at 763. Furthermore, since the last maritime or covered employer rule holds covered employers liable for exposures that took place *after* their liability otherwise ended, "employers are precluded from limiting their liability by adjusting their conduct." *Id.* There is a difference between holding employers (and their insurers) liable for injuries that took place before an employee was hired and for those that took place after an employee left covered employment.

Nonetheless, there are policy arguments to be made to support such an extension of an allocation rule in those situations where, as here, the employee worked for the same employer throughout and was simply transferred by the employer from a covered facility, where he was exposed, to a non-covered facility. Otherwise, an employer could seek to manipulate the system by transferring an exposed employee from a covered to a non-covered facility. *See Fulks v. Avondale Shipyards, Inc.,* 10 Ben. Rev. Bd. Serv. (MB) 340, 345 (1979), *aff'd,* 637 F.2d 1008 (5th Cir.1981); *cf.*

*Todd Shipyards Corp. v. Black,* 717 F.2d 1280, 1285 (9th Cir.1983).

This issue does not need to be resolved because we have upheld the finding of compensability against BIW arising out of Brown's 1941 to 1978 employment at the shipyard, and Commercial Union conceded at oral argument that, if Brown was entitled to compensation under the Act, the extent of such compensation could be based on the 1983 audiogram. Consequently, there is no need to either decide a last maritime or covered employer issue or to decide what deference, if any, we owe to the Director's views in this case. *Cf. Neely v. Benefits Rev. Bd.,* 139 F.3d 276, 281 (1st Cir.1998); *Liberty Mut. Ins. Co.,* 978 F.2d at 757.

We sustain the order of the BRB and deny the petition. Costs are awarded to Brown.