### WISCONSIN POWER & LIGHT COMPANY, Plaintiff-Appellant,

v.

### CENTURY INDEMNITY COMPANY, et al., Defendants-Appellees.

No. 97-1522.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 1997.

Decided Nov. 25, 1997.

Edward P. Henneberry (argued), Howrey & Simon, Washington, DC, Barbara J. Swan, Wisconsin Power & Light Company, Eugene O. Gehl, Coyne, Niess, Schultz, Becker & Bauer, Madison, WI, for Plaintiff–Appellant.

John M. Moore, Bell, Metzner, Gierhart & Moore, William M. Cohn, Cohn & Russell, Chicago, IL, for Century Indemnity Company.

James Martin, Skadden, Arps, Slate, Meagher & Flom (Illinois), Lawrence I. Hanson, Jenswold, Studt, Hanson, Clark & Kaufmann, Madison, WI, Timothy Reynolds, Skadden, Arps, Slate, Meagher & Flom, new York City, for General Reinsurance Corp.

Anthony P. Katauskas, James K. Horstman, Daniel Joseph Neppl, Williams & Montgomery, Chicago, IL, Ronald L. Piette (argued), Milwaukee, WI, for Home Insurance Company.

Michael Fitzpatrick, Brennan, Steihl, Basting & MacDougall, Robert S. Soderstrom, Tressler, Socerstrom, Maloney & Priess, Chicago, IL, for Allstate Insurance Company.

Craig W. Nelson, Nelson, Dries & Zimmerman, Brookfield, WI, John L. Riedl, Nancy Beattie, Luce, Forward, Hamilton & Scripps, San Diego, for Westport Insurance Corp. and St. Paul Fire & Marine Insurance Company.

Michael J. Cohen (argued), Meissner, Tierney, Fisher & Nichols, Milwaukee, WI, for Ranger Insurance Company.

Before POSNER, Chief Judge, and BAUER and ROVNER, Circuit Judges.

POSNER, Chief Judge.

Wisconsin Power & Light Company brought this diversity suit (governed, all agree, by Wisconsin common law) against several insurance companies seeking a declaration that the policies which the utility has bought from these companies cover certain environmental clean-up costs that the utility has incurred or expects to incur. The district judge granted summary judgment for the defendants on the utility's claims of coverage for the incurred costs but refused to rule on the remaining claims. One she thought nonjusticiable, and with regard to the other she decided that in the exercise of her discretion she would withhold declaratory relief.

A clause in the popular comprehensive general liability policy (CGL) indemnifies the insured for "damages because of injury to ... property" that the insured "may sustain by reason of the liability imposed upon [it] by law." The principal question presented by the appeal is whether any of Wisconsin Power & Light's clean-up costs are "damages." The Wisconsin courts interpret the word "damages" in the CGL clause narrowly to mean damages at law as distinct from costs incurred in complying with an injunction or other equitable decree, including an order by an environmental agency to

clean up contaminated property. *City of Edgerton v. General Casualty Co.*, 184 Wis.2d 750, 517 N.W.2d 463, 477–78 (1994); *School District v. Wausau Ins. Cos.*, 170 Wis.2d 347, 488 N.W.2d 82, 89–92 (1992); *Sauk County v. Employers Ins.*, 202 Wis.2d 433, 550 N.W.2d 439, 442 (1996). These costs, when incurred to comply with orders issued by agencies enforcing state or federal environmental statutes, are known as "response costs." The vast majority of state courts to have addressed the issue construe "damages" in the CGL to include response costs. See *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990); *Hazen Paper Co. v. United States Fidelity & Guaranty Co.*, 407 Mass. 689, 555 N.E.2d 576 (1990); *Minnesota Mining & Mfg. Co. v. Travelers Indemnity Co.*, 457 N.W.2d 175 (Minn.1990); *C.D. Spangler Construction Co. v. Industrial Crankshaft & Engineering Co.*, 326 N.C. 133, 388 S.E.2d 557 (1990); *Boeing Co. v. Aetna Casualty & Surety Co.*, 113 Wash.2d 869, 784 P.2d 507 (1990); but see *Patrons Oxford Mutual Ins. Co. v. Marois*, 573 A.2d 16 (Me.1990); and see generally Peter J. Kalis, Thomas M. Reiter & James R. Segerdahl, *Policyholder's Guide to the Law of Insurance Coverage* § 5.03, p. 5–9 (1997). But that is of no moment here, since it is Wisconsin law that governs.

There are two sites, one at Beaver Dam and the other at Beloit. Decades ago the utility, which had manufactured gas at those sites, sold them to Kraft Foods and to the City of Beloit, respectively. It turns out that the utility's manufacturing operations had caused contamination of soil and groundwater. The utility has incurred investigative costs at both sites to determine the extent of the contamination. It has also been sued by the City of Beloit, though the suit has not yet moved beyond the earliest stage; it has agreed to pay Kraft $1.65 million; and it fears future claims by Kraft. All these incurred and expected expenses it contends are "damages." The district judge limited her ruling on coverage to the investigative costs and the $1.65 million, that is, to the costs that have already been incurred, which she held are response costs and therefore not covered; and we begin our analysis there.

■ The question whether the insurance policies cover the investigative costs is identical for the two sites. The district judge thought it clear that the utility had incurred these costs not because of any claims against it by the current owners of the properties in question, the City of Beloit and Kraft Foods, but because as the polluter the utility was legally responsible, along with the current owners, for cleaning up the sites. True, when it incurred the investigative costs it had not yet been ordered to clean up the sites, but seeing the handwriting on the wall it had begun trying to figure out what it would have to do in order to clean them up. And in formulating its plans for cleaning up it had consulted the Wisconsin Department of Natural Resources, the agency that would be ordering it, if necessary, to clean up the two sites. The absence of clean-up orders bears on the issue of coverage only insofar as it might seem to undermine the judge's belief that the utility was acting under the compulsion of environmental law, which prescribes equitable relief, rather than in response to a claim under tort or contract law for damages. Were there no claim for damages the absence of an order to clean up a polluted site would not help the utility's argument that it has insurance coverage. The world of expense does not divide neatly into damages on the one hand and costs incurred to comply with an order by a public agency on the other hand. Costs incurred in anticipation of an order would be neither class of expense, and as only damages are covered by the insurance policy the incurring of such costs would not bring the insured within the scope of the policy.

■ The complicating factor is that the current owners of the sites are also legally responsible for the pollution, along with the utility, and they might have claims for indemnification by or contribution from the utility, especially since the latter was the actual polluter and the former are merely the innocent purchasers of the polluted property. We know from *General Casualty Co. v. Hills*, 209 Wis.2d 167, 561 N.W.2d 718 (1997), that these claims for indemnification or contribution would be deemed claims for damages

within the meaning of the CGL. See also *Robert E. Lee & Associates, Inc. v. Peters*, 206 Wis.2d 508, 557 N.W.2d 457, 462 (1996); *Sauk County v. Employers Ins., supra*, 550 N.W.2d at 442–43; cf. *Patrons Oxford Mutual Ins. Co. v. Marois, supra*, 573 A.2d at 18–19. Yet even if the investigation was conducted in anticipation of suits by the property owners, Wisconsin Power & Light might lose. A cost incurred in preparation for a lawsuit is not a form of damages, *J.R. Cousin Industries, Inc. v. Menard, Inc.*, 127 F.3d 580, 582–83 (7th Cir. 1997); *Bazzini v. Garrant*, 116 Misc.2d 119, 455 N.Y.S.2d 77, 79 (1982), unless it is the cost of a measure reasonably designed to mitigate damages. (This proposition is supported by *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 738 (Minn.1997); we have found no cases directly on point.) But that is not argued here. There is also no suggestion that the insurance companies violated their duty to defend, as distinct from the duty to indemnify, by failing to pick up the tab for the investigation. Ordinarily the costs of investigation are borne by the insurance company once it is notified of the claim against its insured. But if the insurer refused to conduct the necessary investigation the insured could do so and charge the expense back to the insurance company, *Cooley v. Mid–Century Ins. Co.*, 52 Mich.App. 612, 218 N.W.2d 103 (1974), since it would be conferring a benefit on the insurer, just as it would be doing if it mitigated its damages for which the insurer would otherwise be liable. These exceptions to one side, damages are what you pay to the other side, not what you pay to a lawyer or consultant for assistance in your tussle with the other side, unless the payment benefits the insurance company by reducing its potential liability for the costs either of defense or of indemnification.

Another way of looking at the investigative costs, however, is that they are not defense costs at all—that is, costs incurred to ward off or reduce a legal sanction, like the environmental investigation costs in *Domtar, Inc. v. Niagara Fire Ins. Co., supra*, 563 N.W.2d at 737–38, and *American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 452 Mich. 440, 550 N.W.2d 475, 485 (1996)—but merely the first stage of the utility's cleaning up of the sites, in the same way that soil borings might be the first stage of a construction project. But this characterization, while entirely plausible in the circumstances of this case, could support the utility's insurance claim only if the investigations had been conducted in anticipation of claims for damages, and they were not. A claim for damages must be distinguished from a demand for compliance with a legal duty. The fact that someone reminds you that you have a duty to clean up a site does not convert your clean-up expense into legal damages.

That clearly was the situation at the Beloit site. Before the Wisconsin Supreme Court decided the *Edgerton* case, it was widely believed—and, more to the point, was believed by Wisconsin Power & Light—that response costs were damages under the CGL policy. So the utility conducted the investigation at its own expense, hoping to recoup the expense from its insurers. True, it was being pestered by the City of Beloit to investigate and clean up the site. But the City could not make a claim for damages until it incurred its own costs in dealing with the contamination, or sustained some other monetizable harm. The City had not yet incurred any clean-up costs; and, so far as appears, it either had not experienced or had not discovered any harm from the pollution. When *Edgerton* came down, the utility stopped investigating, so naturally the City of Beloit became even more edgy and began claiming that the utility had a legal duty to clean up the site, and eventually sued. It still had not incurred its own costs of cleaning up, but the complaint alleges nuisance-type damages, that is, harm to the City from the contamination. The suit and the claim that underlay it were filed after the utility incurred its investigative expense, however; they did not precipitate the expense. And although the nuisance-type harm might well have begun before the utility began its investigation, there is no evidence that the investigation was undertaken even in part in order to limit, by cleaning up the contamination, the amount of nuisance-type damages that might accrue in the future. (The clean up could not cure harm already incurred by the

City, for example pollution damage to buildings owned by the City.)

■ The situation at Beaver Dam is only a little less clear. It is true that the $1.65 million that the utility paid Kraft was pursuant to an agreement that contains a clause in which Kraft waives any claims it might have against the utility relating to groundwater contamination at the site. The utility argues that the $1.65 million was in effect the price it paid in settlement of Kraft's claims. A more natural reading has the utility agreeing to pay Kraft to perform the utility's equitable duty of cleaning up the site, which was easier for Kraft to do because it was in possession of the site. That is a detail. The important point is that the agreement came two years after the Department of Natural Resources had ordered the utility to clean up the site. Costs that the utility incurred after the order, either directly or in hiring Kraft to clean up the site, were response costs, which the utility was required to incur by virtue of governmental command. Only if the utility disobeyed the command, forcing Kraft to shoulder the expense of the clean up, would Kraft have a damages claim against it.

"Only if the utility disobeyed the command...." Suppose the $1.65 million agreement really was a settlement of Kraft's potential damages claims against the utility. Those claims would have arisen only if the utility had dragged its heels in complying with the DNR's order to clean up the Kraft site, for there is no suggestion that any of the claims were for nuisance-type damages resulting from the harm caused by the existing contamination. Had the utility complied promptly with the DNR's order, the $1.65 million would be response costs and the insurance company would be off the hook. The utility is thus claiming a right to transform response costs into legal damages by sheer stonewalling. If the utility flouts its duty to clean up a contaminated site, forcing others who bear that duty to sue it for its fair share of the expense, and as a result is able to shift that cost from its own shoulders to those of its insurers, the consequence is to reward wrongdoing. That is something insurance contracts are never interpreted to do. They invariably and for obvious reasons

refuse coverage of intentional wrongdoing. And just as in "murdering heir" cases, see, e.g., *In re Estate of Safran,* 102 Wis.2d 79, 306 N.W.2d 27, 29–30 (1981); *Riggs v. Palmer,* 115 N.Y. 506, 22 N.E. 188 (1889), though less dramatically, it would violate public policy, as well as being an act of self-immolation, for the insurer to tell the insured in effect, "When the government orders you to incur an expense for which others are also liable, don't pay any attention to the order, since by flouting it you may precipitate lawsuits that will enable you to lay off the entire expense on me."

We do not believe that either the insurers or Wisconsin would authorize such a tactic. In cases in which the polluter has prevailed against the insurance company in respect of damages claims by site owners or other co-liable parties, the polluter had not been ordered to clean up the site. See *General Casualty Co. v. Hills, supra,* 561 N.W.2d at 724; *Wisconsin Public Service Corp. v. Heritage Mutual Ins. Co.,* 209 Wis.2d 160, 561 N.W.2d 726, 728 (1997); *Robert E. Lee & Associates, Inc. v. Peters,* supra, 557 N.W.2d at 459; *Spic & Span, Inc. v. Continental Casualty Co.,* 203 Wis.2d 118, 552 N.W.2d 435 (1996).

■ Let us move to the future costs. Kraft's waiver of claims was limited to groundwater contamination at the Beaver Dam site itself. The utility is worried that Kraft may assert claims against it for contamination of soil at the site or of soil or groundwater in adjacent areas. The district judge thought the possibility of such claims too remote to make the dispute over coverage a justiciable dispute between the utility and its insurers. A suit for declaratory judgment must satisfy the requirement of justiciability. E.g., *In re VMS Securities Litigation,* 103 F.3d 1317, 1327 (7th Cir. 1996); *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 692 (7th Cir.1995); *Step–Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d 643, 647 (3d Cir.1990). It is a requirement of Article III, which all suits in an Article III court must comply with. But while a suit by the utility against Kraft for declaratory relief would be premature, that is not true with

regard to such a suit against the utility's insurers.

■ The insurers have disclaimed liability for all costs incurred by the utility in cleaning up these two sites together with any adjacent areas that might be brought within them by the long arm of the environmental agencies. The disclaimer of a contractual duty is a breach of contract even if the time specified in the contract for performing the duty has not yet arrived. It is what is called anticipatory breach. *C.L. Maddox, Inc. v. Coalfield Services, Inc.*, 51 F.3d 76, 81 (7th Cir.1995); *Sunds Defibrator AB v. Beloit Corp.*, 930 F.2d 564, 566 (7th Cir.1991) (applying Wisconsin law); *Young Radiator Co. v. Celotex Corp.*, 881 F.2d 1408, 1414–15 (7th Cir.1989) (ditto). If that is a proper characterization of the conduct by the insurance companies of which Wisconsin Power & Light is complaining, the suit is justiciable.

In fact it is just the kind of case for which declaratory relief is designed. See *Associated Indemnity Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 35 (2d Cir.1992); *Villa Sierra Condominium Ass'n v. Field Corp.*, 878 P.2d 161 (Colo.App.1994); *Restatement (Second) of Contracts* § 253, comment d (1981). The parties have a real dispute, shown by events that having already occurred are not merely speculative or contingent. The harm that would support a conventional suit for damages or an injunction, while predictable, has not yet occurred and may not even be imminent; so Kraft may never sue the utility. But that is irrelevant. If an insurance company cancels your term life insurance, wrongfully in your view, you have a justiciable dispute with the company even though you may live past the term and therefore obtain no tangible benefit if you win the suit (and in fact lose by winning, because you will have to resume paying the insurance premiums). The insurance company would not be heard to reply, "You're a young man; the chance of your dying within the term is negligible." People buy insurance in part for peace of mind rather than because they expect the insured-against event actually to occur. It would be absurd if insurance companies could deny the justiciability of suits against them by arguing that the insured is foolish to be worrying about

"going bare." This conclusion cannot help Wisconsin Power & Light, however; all it does is convert a dismissal for want of jurisdiction into an adverse judgment on the merits.

■ The district judge declined to declare the rights of the utility against its insurers with regard to damages in the City of Beloit's suit. This ruling was based on the uncertainty of state law concerning the City's right to recover the cost to it of cleaning up the site should that cost be less than the value to it of the clean up. In that event it would be goldplating for the City to incur that cost. If the utility persists in its refusal to bear the clean-up costs—its position being, as we have noted, "Sue me, so I can get the insurance companies to pay"—the City will have a choice between, on the one hand, doing the cleaning up itself and suing the utility for the expense and, on the other hand, forgoing the cleaning up and suing for the harm caused by the contamination for which the utility is responsible. That choice may depend on whether the City can insist on what we've called goldplating, a matter on which Wisconsin law is in doubt.

■ The general rule is clear enough. A plaintiff whose property has been damaged receives the lesser of the cost of repairing the damage and the reduction in the value of the property caused by the damage. *Jacob v. West Bend Mutual Ins. Co.*, 203 Wis.2d 524, 553 N.W.2d 800, 807 (1996); 1 Russell M. Ware, *The Law of Damages in Wisconsin* § 18.4, pp. 18–4 to 18–5 (2d ed.1996). It is also clear that if the plaintiff has been ordered by the government to make the repair (or, in a pollution case, to eliminate the pollution), so that it has no choice between incurring the cost of repair and accepting the diminished value of its property, it has a right to sue for that cost. *Nischke v. Farmers & Merchants Bank & Trust*, 187 Wis.2d 96, 522 N.W.2d 542, 551–52 (1994). What is unclear is whether a case such as this is within the exception. The City of Beloit has not been ordered to clean up the pollution, and for all we know may not be even if Wisconsin Power & Light somehow fails to do so.

If all that the utility wanted to know was whether its insurance covers an award of

damages that it might be forced to make to the City of Beloit should it refuse to clean up the site, there would be no reason to refuse a declaratory judgment. Indeed, we have pretty much answered that question in our discussion of stonewalling at the Kraft site. But the utility was seeking more; it was seeking a ruling on the measure of damages to which the City would be entitled in such a suit. To make such a ruling would have been a bizarre exercise of federal declaratory relief. The City's suit against Wisconsin Power & Light was filed in a state court and is not removable to federal court, because it is based purely on state law and there is no diversity of citizenship. The utility wanted the federal court in effect to preempt the state-law suit by deciding the dispositive issues in this diversity suit. That would be a clear abuse of the diversity jurisdiction. *Nationwide Ins. v. Zavalis, supra,* 52 F.3d at 692; *Mitcheson v. Harris,* 955 F.2d 235, 237–38 (4th Cir.1992).

This was a compelling reason to refuse to make this particular ruling that the utility wanted. But that was not the only thing it wanted. It also wanted a ruling on whether it was entitled to insurance coverage for any damages that it might be forced to pay the City whether those damages took the form of reimbursing the City for clean-up costs incurred by the City or of compensating the City, perhaps in some much lesser amount, for injury caused by the pollution. Although it seems reasonably clear that the utility is entitled to coverage for the latter but not the former form of damages, we shall remand this part of the case to the district court for further and more focused consideration of the issue.

The judgment is modified to make the dismissal of the plaintiff's claim relating to possible future claims by Kraft on the merits rather than for lack of jurisdiction, is vacated with respect to the denial of declaratory relief regarding Wisconsin Power & Light's potential liability to the City of Beloit, and is otherwise affirmed.