**In re HA 2003, INC., formerly known as HA–LO Industries, Inc., et al., Debtors.**

**HA 2003, Inc., Plaintiff,**

**and**

**John R. Kelley, Involuntary Plaintiff,**

**v.**

**Federal Insurance Company, et al., Defendants.**

**Bankruptcy No. 02 B 12059. Adversary No. 03 A 04448.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

June 9, 2004.

*Debtor,* Judge's Inquiry.

Elizabeth M. Khachigian, Orrick, Herrington & Sutcliffe LLP, Neal L. Wolf,

Todd L. Padnos, Leboeuf, Lamb, Greene & Macrae, San Francisco, CA, Mark A. Berkoff, Rudnick & Wolfe, Chicago, IL, for debtor.

Brett J. Kitei, Deborah M. Gutfield, Piper Rudnick, Chicago, IL, Donald J. Detweiler, Saul Ewing, LLP, Wilmington, DE, Mark A. Berkoff, Chicago, IL, Steven J. Christenholz, for Official Committee of Unsecured Creditors.

Robert D. Cheifetz, Steven C. Florsheim, Chicago, IL, for plaintiff.

Janet R. Davis, Meckler Bulger & Tilsen, Patrick W. Carlson, Dirk E. Ehlers, Joanne J. Matousek, Michael Silverman, Duane Morris LLP, Richard Darke, Claire P. Murphy, Sperling & Slater PC, Daniel J. McMahon, Jason W. Kuzniar, Patrick Cary, Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, IL, Thomas J. Judge, Thompson, Loss & Judge LLP, Alan J. Joaquin, Drinker, Biddler & Reath, Jason P. Cronic, Valerie E. Green, Wiley Rein & Fielding LLP, Washington, DC, Robinson Curley & Clayton, PC, Michael P. Tone, Ross, Dixon & Bell, Chicago, IL, David C. Christian, Derek J. Meyer, Donald B. Hilliker, Kevin A. Titus, Mitchell A. Orpett, Tribler & Orpett PC, Chicago, IL, for defendants.

CAROL A. DOYLE, Bankruptcy Judge.

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the court on HALO's motion for partial summary judgment with respect to Counts I, II and III of its complaint against five insurance companies, the insurers' cross motion for summary judgment with respect to Count I, and Zurich's motion to dismiss Counts II and III. The court orally announced its proposed findings of fact and conclusions

of law to the parties in open court on February 17, 2004 with respect to Count I, and on March 3, 2004 with respect to Counts II and III. The court will submit the following proposed findings of fact and conclusions of law regarding the "insured versus insured" exclusion issue in Count I and Count II to the district court pursuant to 28 U.S.C. § 157(c)(1) when the case is ready for entry of final judgment on all issues. Count III will be dismissed by this court for lack of jurisdiction.

## I. Issues

HA–LO moved for partial summary judgment on Count I of its complaint, seeking a declaration that the "insured versus insured exclusion" ("IVI exclusion") does not bar coverage of John Kelley, the former CEO of HA–LO, with respect to HA–LO's adversary proceeding against Kelley. The court concludes that there is no genuine issue of material fact with regard to the most important issue raised in Count I of the complaint and that the IVI exclusion does not bar coverage of HA–LO's claims against Kelley.

HA–LO also asks this court to grant summary judgment on Counts II and III of its complaint and declare that: 1) Kelley has the right to enter into a settlement with HA–LO even though Zurich will not approve it; and 2) the settlement that HA–LO has negotiated with Kelley is reasonable. Zurich's motion to dismiss asserts that Counts II and III fail to present a justiciable controversy. Gulf also filed a cross-motion for summary judgment regarding Count I, which Zurich later adopted, seeking a determination that Kelley is not covered under the policies. The court agrees with HA–LO regarding Count II and with Zurich regarding Count III. Because Zurich denies that Kelley is covered with respect to HA–LO's claims against him, Kelley may settle his lawsuit

without Zurich's permission. However, HA–LO's request for declaratory relief regarding Count III—that the proposed settlement with Kelley is reasonable—is premature and therefore non-justiciable. This count will be dismissed.

## II. Factual Background

The court makes the following recommended findings of fact, none of which are disputed:

Before filing its bankruptcy petition under Chapter 11 of the Bankruptcy Code, HA–LO purchased Directors' and Officers' ("D & O") insurance to provide indemnification for wrongful acts by its directors and officers while acting in their official capacities. Federal Insurance issued the primary policy, which provided $10 million in coverage. Four layers of excess coverage in the amount of $10 million each were provided by National Union Fire Insurance Company, St. Paul Mercury Insurance Company, Zurich American Insurance Company, and Gulf Insurance Company, for a total of $50 million in coverage. The Federal policy provides the terms of coverage of all five policies.

In August 2002, HA–LO filed an adversary proceeding in the bankruptcy court against its former CEO and director, John Kelley, alleging breach of fiduciary duty and corporate waste. Federal has reimbursed Kelley for his defense costs in this action, subject to a reservation of rights. However, the insurers contend that they do not have to indemnify Kelley in the event of a judgment against him because HA–LO's claims against him fall within the insured versus insured exclusion in the policy.

The D & O policy provides that "the Company shall not be liable for Loss on account of any Claim made against any Insured Person ... brought or maintained by or on behalf of any Insured" (the IVI

exclusion). There is a bankruptcy exception to this exclusion. Endorsement 13 exempts from the IVI exclusion "a claim (whether or not brought in the name of, on behalf of, or in the right of the Insured Organization) brought by or on behalf of a bankruptcy trustee, magistrate or any other person appointed by a bankruptcy court or judge, or authorized under applicable law to act on behalf of a debtor or brought by or on behalf of any creditor of the Insured Organization." Relying principally upon the IVI exclusion, the insurers refused to acknowledge coverage of HA–LO's claims against Kelley. Instead, Federal, the primary carrier, began reimbursing Kelley for defense costs while reserving its right to contest coverage.

In November 2003, HA–LO filed this adversary proceeding against the five insurance companies. It joined Kelley as an involuntary plaintiff. HA–LO and Kelley seek, among other things, a declaration that the IVI exclusion does not bar coverage of Kelley (Count I). They further seek a declaration that Kelley has the right to enter into a proposed settlement with HA–LO even though the insurers will not approve it (Count II), and that the settlement HA–LO has negotiated with Kelley is reasonable (Count III). In Count IV, HA–LO and Kelley seek to hold the insurers responsible for the entire amount of the stipulated judgment under the proposed settlement.

The HA–LO v. Kelley action was set for trial in February 2004. The parties to this adversary agreed to an expedited schedule for resolving the issues raised in HA–LO's motion for summary judgment with respect to Counts I, II, and III.

In February 2004, shortly before this court announced its proposed findings of fact and conclusions of law with respect to Count I (regarding the IVI exclusion), Federal and National settled with HA–LO, tendering the full amounts of their policies to Kelley. On February 17, 2004, the court announced orally its recommended findings regarding the motion for partial summary judgment on Count I. Soon thereafter, St. Paul and Gulf settled with HA–LO, tendering almost the full amounts of their policies to Kelley as well (St. Paul tendered $10 million; Gulf tendered $9 million). Zurich is the only insurer who has not yet settled. Although it has offered to tender the $10 million value of its policy under certain conditions, HA–LO intends to pursue Zurich not only for the $10 million value of its policy, but also for bad faith denial of coverage. Thus, although most of the insurers have briefed most of the issues before the court, the only defendant remaining in this action is Zurich.

### III. Jurisdiction

The court has jurisdiction over this case under 28 U.S.C. § 157(a), which permits a district court to order that "all cases arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." The district court has referred all such cases to the bankruptcy court in this district, under Internal Operating Procedure 15 of the Northern District of Illinois.

This adversary proceeding is not within the core jurisdiction of the court (*see* 28 U.S.C. § 157(b)(2)), but falls within the court's "related to" jurisdiction because it will have an impact on the amount of assets available for distribution to creditors in the HA–LO bankruptcy. *In re FedPak Systems, Inc.,* 80 F.3d 207, 213 (7th Cir. 1996). In cases over which the bankruptcy court has only "related to" jurisdiction, the bankruptcy court may not enter a final judgment. Instead, the court "shall submit proposed findings of fact and conclusions of law to the district court, and any

final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Bankruptcy Rule 7056 provides that Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. Under Rule 56(d), if a motion for summary judgment does not resolve the entire case or all the relief sought, and a trial is necessary, the court shall specify which facts exist without substantial controversy and direct such further proceedings in the action as are just. Fed.R.Civ.P. 56(d). In this case, the court has determined that there are no facts in controversy regarding the interpretation of the IVI exclusion in Count I or Kelley's right to settle without Zurich's consent in Count II. The parties are nearing the completion of discovery regarding the remaining issues in this case. However, all counts of the complaint have not yet been resolved (and all issues in Count I have not been resolved). Therefore, the court will not transmit these proposed findings to the district court until the court can present proposed findings to the district court disposing of the entire case.

## IV. Standard on Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Fed. R. Bankr.P. 7056; *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491 (7th Cir.2000). The function of the presiding court is not to weigh evidence and to make credibility

determinations or to attempt to determine the truth of the matter but, rather, "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990). The court views the facts in a light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences to be drawn from that evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir.2000). The party moving for summary judgment "has the burden of showing the absence of a genuine issue of material fact." *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1118 (7th Cir.1992) (citation omitted).

## V. Standard for Interpretation of Insurance Contracts

The construction of insurance policies presents "questions of law to be decided by the court." *Transamerica Ins. Co. v. South*, 975 F.2d 321, 327 (7th Cir. 1992) (citation omitted). When an exclusionary clause in an insurance policy is relied upon to deny coverage, its applicability must be clear and free from doubt." *Id.* (quoting *Insurance Co. v. Markogiannakis*, 188 Ill.App.3d 643, 136 Ill.Dec. 307, 309, 544 N.E.2d 1082, 1094 (1989)). It is a "well settled principle ... of Illinois law that exclusion clauses must be narrowly construed." *QBE Int'l Ins. Ltd. v. Clark*, 2003 WL 22433117, at *17 (N.D.Ill. Oct. 24, 2003) (citations omitted). If the terms of a policy are susceptible to more than one meaning, they are "considered ambiguous and will be construed strictly against the insurer who drafted the policy." *McKinney v. Allstate Ins. Co.*, 188 Ill.2d 493, 497, 243 Ill.Dec. 56, 722 N.E.2d 1125, 1127 (1999).

## VI. Partial Summary Judgment on Count I Regarding the IVI Exclusion is Appropriate

### A. No Issue of Fact Regarding the IVI Exclusion

 There is no material issue of fact regarding whether the IVI exclusion applies to HA–LO's claims against Kelley. The issue presented is simply one of interpreting the language of the bankruptcy exception to the IVI exclusion. None of the insurers asserts either that HA–LO helped draft the contract or that HA–LO and the insurers had discussions about the IVI exclusion, the bankruptcy exception, or any other portion of the policy. St. Paul (one of the insurers who later settled) argued that extrinsic evidence should be examined to determine the meaning of the IVI exclusion and the bankruptcy exception. Although Zurich did not raise this argument, the court notes that it has no merit. St. Paul relied on a letter from counsel for HA–LO's directors' committee written nearly one year after the D & O policy was issued. In that letter, without any specific analysis of the policy language, counsel advised that the policy might protect directors on claims brought in a bankruptcy proceeding as long as they were not brought by the debtor-in-possession or with the assistance of the directors or officers.

 This letter, however, is irrelevant to our inquiry. Extrinsic evidence is inadmissable unless the contract is ambiguous, and even then, the extrinsic evidence must reflect the parties' intent before or at the time of execution of the contract. *E.g.*, *Krautsack v. Anderson*, 329 Ill.App.3d 666, 680, 263 Ill.Dec. 373, 768 N.E.2d 133, 146 (2002). The letter in question was written both after the negotiation of the contract and by someone who was not involved in drafting it. The letter thus does not shed any light on the intent of the drafters when the contract was executed. A court facing the same facts correctly noted that "the evidence in question is not probative of the parties' intent at the time that they agreed on the insurance coverage at issue." *In re Molten Metal Tech., Inc.*, 271 B.R. 711, 727 (Bankr.D.Mass.2002). As in *Molten Metal*, St. Paul presented no evidence that HA–LO's attorney, or "any of its employees or agents, discussed or negotiated the language at issue with the Insurers." *Id.* Therefore, it remains undisputed that the insurers alone drafted the language in the contract.

### B. Endorsement 13 Applies to a Debtor–in–Possession

 Endorsement 13 of the insurance contract provides that the IVI exclusion does not apply to a "claim ... brought by or on behalf of a bankruptcy trustee, magistrate or any other person appointed by a bankruptcy court or judge, or authorized under applicable law to act on behalf of a debtor or brought by or on behalf of any creditor of the Insured Organization." The court finds that HA–LO as debtor-in-possession is authorized under the Bankruptcy Code to act on behalf of the debtor company.

 Under the Bankruptcy Code, "the debtor-in-possession steps into the role of trustee and exercises concurrent authority to sue and be sued on behalf of the estate." *Cable v. Ivy Tech State College*, 200 F.3d 467, 473 (7th Cir.1999). Section 1107(a) of the Bankruptcy Code provides, with limited exceptions, that the debtor-in-possession shall have all the rights and powers and shall perform all the functions and duties of a trustee serving in a case under Chapter 11. 11 U.S.C. § 1107(a). Bankruptcy Rule 6009 provides that "with or without court approval, the trustee or debtor-in-possession may prosecute or may enter an appearance and de-

fend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal." Fed. R. Bankr.P. 6009. Thus, under the Bankruptcy Code, the debtor-in-possession is authorized to act on behalf of a debtor without need of a court order granting such authority. HA–LO as debtor-in-possession falls squarely under the language of Endorsement 13 because it is authorized under applicable law, the Bankruptcy Code, and Bankruptcy Rules to act on behalf of the debtor.

### 1. "Persons" Includes Organizations

Zurich raises several arguments against a finding that the bankruptcy exception in Endorsement 13 applies to HA–LO. First, it contends that HA–LO does not fall within Endorsement 13 because it is not a human "person." Endorsement 13 applies to claims brought by a "person appointed by a bankruptcy court or judge, or authorized under applicable law to act on behalf of the debtor." Zurich argues that the policy consistently distinguishes between individual "persons" and organizations. The insurance contract does not contain a definition of "person." It defines "Insureds" to include both the "Insured Organization," the corporate entity, and the "Insured Persons," the individual directors and officers covered by the policy. "Insured Person" is defined in Paragraph 18 of the Executive Liability and Indemnification Coverage Section of the policy as "either in the singular or plural . . . any one or more of those persons designated in Item 6 of the Declarations for this coverage section." Item 6, in turn, identifies "Insured Persons" as "any person who has been, now is, or shall become a duly elected director or a duly elected or appointed officer of the insured organization." However, this definition provides no guidance regarding whether "person" in Endorse-

ment 13 includes organizations. In fact, it is the language that follows "person" in this definition that makes it clear that "Insured Persons" are human beings, because they must be officers or directors. Endorsement 13 uses "person" in a different context and the language following "person" in Endorsement 13 makes it clear that this term includes organizations because organizations are authorized under applicable law to act on behalf of a debtor.

In the absence of a specific definition of "person" in the contract, it is reasonable to look to the "applicable law," the Bankruptcy Code, to determine who is authorized to act for a debtor. "Person" is defined in the Bankruptcy Code to include "individual, partnership, and corporation." 11 U.S.C. § 101(41). If the drafters of the policy intended a contrary result, they would have included "person" as a defined term meaning only human beings and not organizations. The contract contains no indication that "person" in Endorsement 13 is intended to exclude organizations. In addition, even without reference to the Bankruptcy Code, at best there is an ambiguity regarding the definition of "person" for purposes of Endorsement 13. In accordance with the rules of construction of contracts discussed above, this ambiguity must be construed against the insurer who drafted the policy. *McKinney v. Allstate Ins. Co.*, 188 Ill.2d 493, 497, 243 Ill.Dec. 56, 722 N.E.2d 1125, 1127 (1999). For all of these reasons, the court concludes that the debtor-in-possession, HA–LO, is a "person" for purposes of Endorsement 13.

### 2. "Debtors-in-possession" not Specifically Identified

Next, Zurich argues that Endorsement 13 was not meant to apply to a debtor-in-possession because the clause does not specifically identify "debtors-in-possession" as a party falling within its terms. Zurich points to another provision in the contract

in which debtors-in-possession are specifically mentioned as evidence that debtors-in-possession were not intended to fall with Endorsement 13. "Financial Impairment" in Endorsement 15 is defined as a condition that may result from "(I) the appointment by any state or federal official, agency or court [of] any receiver, conservator, liquidator, trustee, rehabilitator or similar official ..., or (ii) the Insured Organization becomes a debtor-in-possession." The drafters were obviously intending to include non-bankruptcy conditions as well as bankruptcy within the scope of Financial Impairment. However, this clause sheds no light on how the Endorsement 13 bankruptcy exception to the IVI exclusion should be construed. In fact, the lack of a specific reference to debtors-in-possession supports an inference that, if the drafters intended to exclude them from Endorsement 13, they would have done so expressly. Endorsement 13 was written broadly by the insurance carriers themselves. If they did not intend for it to apply to debtors-in-possession, who are clearly authorized to act on behalf of the debtor under the Bankruptcy Code, the insurers should have specifically excluded them. As noted earlier, it is a "well settled principle ... of Illinois law that exclusion clauses must be narrowly construed." *QBE Int'l Ins. Ltd. v. Clark*, 2003 WL 22433117, at *17 (N.D.Ill. Oct. 24, 2003) (citations omitted). Therefore, the IVI exclusion should be read narrowly and Endorsement 13 should be read broadly to include debtors-in-possession acting on behalf of the debtor.

### 3. "By or on behalf of any creditor"

■ HA–LO argues that, regardless of whether a debtor-in-possession is a person authorized under applicable law to act on behalf of the debtor, its claims against Kelley fall under another exception created by Endorsement 13 for actions brought "by or on behalf of any creditor of the Insured Organization." HA–LO argues that its suit is brought "on behalf of" its creditors because any recovery will become part of the estate distributed to creditors under the debtor's Chapter 11 plan. The court agrees with Zurich, however, that the claims filed by HA–LO against Kelley are not brought directly on behalf of creditors. They are claims for breach of fiduciary duty that only the corporation, not its creditors, may bring unless circumstances not present in this case exist. *See, e.g., Dexia Credit Local v. Rogan*, 2003 WL 22349111, at *7 (N.D.Ill. Oct. 14, 2003) ("generally, corporate officers and directors do not owe fiduciary duties to a corporation's creditors"); *Technic Engineering, Ltd. v. Basic Envirotech, Inc.*, 53 F.Supp.2d 1007, 1011 (N.D.Ill.1999); *In re Rehabilitation of Centaur Ins. Co.*, 158 Ill.2d 166, 174, 198 Ill.Dec. 404, 632 N.E.2d 1015, 1018 (1994). Therefore, claims brought by HA–LO are not "brought on behalf of creditors" for purposes of Endorsement 13, even though creditors may ultimately benefit if HA–LO prevails.

### C. Collusion

■ HA–LO and the insurers also make various arguments about the possibility of collusion in this case. However, this issue is simply not relevant to the construction of the contract. The court must interpret the contract based on its terms, not based on theoretical or real concerns about collusion. *Level 3 Communications, Inc. v. Federal Ins. Co.*, 168 F.3d 956, 958 (7th Cir.1999).

### D. Zurich's Rule 56(f) Affidavit

Zurich argues at the end of its brief that the court cannot grant partial summary judgment on Count I because additional discovery is required regarding who participated in the drafting of the agreement so that the court can determine whether

the rule of construing ambiguities against the insurers should apply. Paragraph 16 of Zurich's affidavit in support of this argument states that Zurich has not conducted discovery of HA–LO, its brokers and agents, or Federal Insurance Co., regarding whether the parties to the insurance policy had an actual meeting of the minds as to the IVI exclusion prior to the original issuance of the policy and its two extensions. In a case in which Zurich has been contesting coverage for months (long before this adversary proceeding was filed), Zurich must present more than this statement to persuade the court that summary judgment is not appropriate at this time. *See, e.g., U.S. v. Bob Stofer Oldsmobile–Cadillac, Inc.,* 766 F.2d 1147, 1153 (7th Cir.1985) ("a party ... may not use Rule 56(f) to gain a continuance where he has made only vague assertions that further discovery would develop genuine issues of material fact").

### E. Zurich's Counterclaim for Reformation

Zurich has filed a counterclaim seeking reformation of the contract. It alleges that the intent of the parties to the contract was to preclude coverage for debtor-in-possession claims against Insured Persons, and that to the extent Endorsement 13 contradicts this intention, it was inserted by reason of mutual mistake. The only evidence Zurich relies upon to support this contention is the letter from counsel for directors of HA–LO discussed earlier, that was written long after the policy including Endorsement 13 was entered between the parties. As noted earlier, this letter has no relevance to the intention of parties at the time the contract was entered and does not provide a basis for denying partial summary judgment on Count I.

For all of these reasons, the court will recommend to the district court that it grant HA–LO's motion for partial summary judgment with respect to the IVI exclusion issue raised in Count I of HA–LO's Complaint, and that it deny Zurich's cross-motion for summary judgment with respect to Count I.

## VII. Counts II and III

HA–LO has also moved for summary judgment on Counts II and III of its amended complaint regarding Kelley's rights to enter into a settlement agreement with HA–LO without Zurich's permission. Zurich moved to dismiss Counts II and III on the basis that they do not present a ripe case or controversy. For the reasons stated below, the court proposes that the district court grant HA–LO's motion for summary judgment with regard to Count II. Zurich's motion to dismiss Count III for lack of jurisdiction will be granted by this court.

### A. Should Counts II and III be Dismissed as Premature?

HA–LO seeks a declaratory judgment in Count II that Kelley has the right to enter into a settlement even though the insurers will not approve it; and in Count III that the proposed settlement that HA–LO has negotiated with Kelley is reasonable. Zurich asks the court to dismiss both counts for failing to present an actual case or controversy. The court agrees with Zurich with regard to Count III, but concludes that Count II is ripe for adjudication.

#### 1. The Declaratory Judgment Act and the Case or Controversy Requirement

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The statute does not

dispense with the Constitution's requirement that federal courts hear only actual cases or controversies. *VMS Ltd. Partnership Sec. Litigation v. Prudential Sec. Inc., (In re VMS Sec. Litigation)* 103 F.3d 1317, 1327 (7th Cir.1996). The primary purpose of the Declaratory Judgment Act is to "avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damages had accrued." *Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165, 1167–1168 (7th Cir.1969) (citation omitted). Actions for declaratory relief "are routinely upheld where one party to an agreement seeks a determination of the respective rights and liabilities under the contract terms. In those cases, declaratory relief is appropriate without requiring the parties to commit a breach or sustain damages." *Lundquist v. Sec. Pac. Automotive Fin. Serv. Corp.,* 1992 WL 475651, at *6 (D.Conn. June 9, 1992) (citing *Keener Oil & Gas Co. v. Consolidated Gas Utilities Corp.,* 190 F.2d 985, 989 (10th Cir. 1951)).

██ The Seventh Circuit has recognized that a broad spectrum of disputes falls within the case or controversy limits of Article III of the Constitution. For example, in *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677 (7th Cir. 1992), a plaintiff in a fraud case sued the defendant's insurance carrier. The Seventh Circuit found a justiciable case or controversy, even though no judgment had been entered on the underlying fraud case. The court rejected the insurer's argument that a coverage suit cannot be maintained against the insurer before a judgment is entered on the underlying lawsuit against the insured. *Id.* at 680–82. It concluded that the victim of an insured's tort has a legally protectable interest in the policy before he has reduced the tort claim to

judgment, and that such an interest is "all one needs to bring a dispute that seriously threatens it within the scope of Article III." *Id.* at 682. Similarly, in *Wisconsin Power & Light Co. v. Century Indem. Co.,* 130 F.3d 787 (7th Cir.1997), the court stated that an insurance company's disclaimer of liability is sufficient to create a justiciable controversy, even if the duty to perform the contract has not yet arrived. It concluded that these efforts present "just the kind of case for which declaratory relief is designed." *Id.* at 793. The court noted that "the parties have a real dispute shown by events having already occurred." *Id.* Thus, a suit to determine whether conduct that has already occurred constitutes a breach of a contract presents a case or controversy over which the court has jurisdiction.

## 2. Count II

██ In Count II of the complaint Kelley seeks to define his rights under the insurance contract. He asks this court to determine that, because Zurich has refused to acknowledge coverage and to approve a settlement within the policy limits, he may enter into a reasonable settlement without Zurich's consent and without breaching the consent clause of the insurance contract. This is an actual controversy because Kelley is presently threatened by the possibility that his proposed settlement with HA–LO without Zurich's approval will cause him to lose coverage under the policies. The issue can be decided based on events that have already occurred, not based on hypothetical facts or speculative contingencies. Thus, this determination falls squarely within the purpose of the Declaratory Judgment Act, which is to prevent avoidable damages to a party not certain of his rights. *Wisconsin Power,* 130 F.3d at 793–94; *Bankers Trust,* 959 F.2d at 681–82; *Cunningham Brothers,* 407 F.2d at 1167–1168.

Zurich contends that this case is similar to *Maryland Ins. Co. v. Attorneys' Liability Assurance Soc'y, Ltd.*, 748 F.Supp. 627 (N.D.Ill.1990), in which the district court found a declaratory action by an insurance company non-justiciable because the underlying case had not yet settled. However, in that case, the insurance company simply wanted a definition of what its future rights would be if the case actually settled—not what its current rights were under a specific contract. Unlike this case, there was no imminent threat in *Maryland* that a contract would be breached or that avoidable damages would occur. Thus, *Maryland* is not instructive with regard to Count II.

### 3. Count III

■ In Count III, however, HA–LO asks the court to declare that the proposed settlement with Kelley is reasonable. This count seeks a declaration based on events that have not yet occurred—namely the signing of a settlement agreement between Ha–LO and Kelley.[1] Count III is therefore similar to the facts of *Maryland*. As the court in *Maryland* concluded, "[a]fter all, the world is full of people who would much prefer to have their courses of future conduct defined by advice from courts, rather than by advice from their own lawyers predicting what courts are likely to do." 748 F.Supp. at 629. This court may not prospectively declare that Kelley and HA–LO have negotiated a fair settlement. Count III does not address an actual case or controversy, but rather seeks a hypothetical advisory opinion. Count III should therefore be dismissed. Because the court lacks jurisdiction over this non-justiciable matter, it will directly dismiss

this count without referring recommended findings to the district court.

### B. Summary Judgment is Appropriate on Count II

#### 1. No Issue of Material Fact

Zurich does not contest any fact material to the court's decision regarding Count II. The following are additional proposed findings of fact relevant to Count II.

Settlement negotiations were conducted between HA–LO, Kelley, and the insurers over a number of months. On November 3, 2003, in a mediation session, HA–LO and the plaintiffs in a securities litigation filed against Kelley and others made a joint offer to settle both cases for a total of $43.5 million. By a letter dated November 4, 2003, Kelley's counsel demanded that the insurers settle both cases within the policy limits. HA–LO asserts in its Local Rule 56.1 statement (Par. 62) that the insurers refused to provide the funds needed to accept the demand, and refused to acknowledge coverage or an indemnification obligation. Although Zurich disputes this contention in its Rule 56.1 statement, it does not provide any actual evidence that HA–LO's statement is not true. Zurich protests on two grounds: 1) that the statement implies Zurich has no other basis besides the IVI exclusion for contesting coverage; and 2) that the statement fails to recognize that Zurich has no duty to indemnify until the first three layers of insurance have been paid. Zurich, however, offers no evidence contradicting HA–LO's evidence that the $43.5 million settlement demand was rejected.

---

1. When the court announced its decisions in open court regarding the motions addressed by this opinion, the settlement agreement negotiated between HA–LO and Kelley had not been signed. After the court announced its rulings, HA–LO and Kelley signed the agree-

ment, and the court then approved the settlement from HA–LO's perspective under Bankruptcy Rule 9019. The court did not address whether the settlement was reasonable from Kelley's perspective for purposes of Count III of the amended complaint.

Zurich also continues to contest coverage. It apparently intended to force Kelley to try the HA–LO v. Kelley case, after which Zurich would seek an adjudication that there is no coverage under the policies. Zurich further contends in response to HA–LO's motion for summary judgment that any settlement between HA–LO and Kelley without its consent relieves Zurich of any obligation to indemnify that might otherwise have existed. Thus, Zurich has refused to agree to any settlement, and contends that if Kelley settles without its consent, he loses any coverage that might exist.

■ The parties also do not dispute that Federal, the primary insurer, has reimbursed Kelley for his defense costs while reserving its rights to contest coverage, even though the insurance contract does not require payment of defense costs. In Illinois, as in most states, when a complaint against the insured alleges facts "within or potentially within the scope of the policy coverage" the insurer denying coverage "must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage." *Clemmons v. Travelers Ins. Co.*, 88 Ill.2d 469, 475, 58 Ill.Dec. 853, 430 N.E.2d 1104, 1107 (1981). If the insurer fails to do either "it is later estopped from denying coverage in a suit to collect the judgment." *Id.* Thus, because the insurers in this case did not file a declaratory judgment action to determine coverage, they had to defend Kelley's lawsuit under a reservation of rights or risk later losing the right to deny coverage.

### 2. Issue

■ The issue presented in Count II is whether Zurich has lost the right to consent to a settlement by denying coverage of HA–LO's claims against Kelley. HA–LO contends that, because Federal was

paying Kelley's defense costs subject to a reservation of rights and Zurich has denied coverage, Zurich is not protected by the "general rule which holds that, in the absence of a breach of the duty to defend, an insured must obtain the consent of the insurer before settling with an injured plaintiff." *Guillen v. Potomac Ins. Co. of Ill.*, 203 Ill.2d 141, 149, 271 Ill.Dec. 350, 785 N.E.2d 1, 6 (2003). The court agrees. Zurich may not deny coverage and still maintain control over the settlement between HA–LO and Kelley.

### 3. Illinois Law

■ The general rule in Illinois is that if an insurer does not breach the insurance contract, the insured must get the insurer's approval before settling the case. *Guillen*, 203 Ill.2d at 149, 271 Ill.Dec. 350, 785 N.E.2d at 6. An insurer does not breach the policy simply by providing defense costs subject to a reservation of rights. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 150, 237 Ill.Dec. 82, 708 N.E.2d 1122, 1134–35 (1999). Zurich argues that it has not breached the contract and therefore that Kelley must obtain its consent before settling with HA–LO. However, the majority of courts addressing this issue convincingly holds that the rules change once an insurer reserves its rights and takes a position that coverage does not apply.

The only Illinois court addressing this specific issue has adopted the majority approach. *Commonwealth Edison Co. v. Nat'l Union Fire Ins. Co.*, 323 Ill.App.3d 970, 985, 256 Ill.Dec. 675, 752 N.E.2d 555, 567 (2001), held that when an insurer that defended while reserving its right to contest coverage lost the right to consent to a settlement. The court quoted extensively from *Cay Divers, Inc. v. Raven*, 812 F.2d 866 (3rd Cir.1987), which held that, by providing the insured with independent

counsel while reserving a right to contest coverage, an insurer renounces control of the litigation and thrusts responsibility for the litigation on the insured, who is then free to enter into a reasonable settlement. Zurich argues that these cases do not apply here because it had no duty to defend under the insurance contracts. While this is true, it is irrelevant. Zurich has done more than reserve its right to contest coverage; it has flat-out denied coverage and it litigating that issue to judgment in this case. Thus, there is little question that the holding of *Commonwealth Edison* applies to Zurich. Although the facts of *Commonwealth Edison* are more complex, and involve a relinquishment of control by the insurance carrier because of a conflict of interest between two insureds, the court's holding is a clear acceptance of the majority view addressed below.

Zurich further argues that the Illinois Supreme Court has implicitly rejected the *Commonwealth Edison* holding by later referring to the general rule that absent a breach by the insurers, the insured must obtain consent before settling. *Guillen v. Potomac Ins. Co. of Ill.*, 203 Ill.2d 141, 149, 271 Ill.Dec. 350, 785 N.E.2d 1, 6 (2003). However, *Guillen* does not undermine the holding or logic of *Commonwealth Edison.* In *Guillen*, the insurer refused to defend or indemnify, so the court did not address the consequences of an insurer defending under a reservation of rights. The question presented here is not what the general rule is, but whether Illinois courts have recognized an exception to that rule. The *Guillen* court's reference to the general rule thus cannot be construed as an opinion on an issue not presented.

## 4. The Law from Other Jurisdictions

### a. Parallel Cases

Many courts in other jurisdictions agree with the logic of *Commonwealth Edison* and hold that once an insurer has reserved its rights to contest coverage, or is actually contesting coverage, as is the case here, the insured has the right to settle without consent of the insurer. For example, *Cay Divers, Inc. v. Raven*, 812 F.2d 866, 870 (3rd Cir.1987), discussed above, held that "an insurer's discharge of its duty to defend by providing independent counsel, even though reserving the right to contest coverage, relieves it of control over the litigation, and a reasonable settlement effectuated by the insured does not bar an action for indemnification against the insurer." In other words, an insurer cannot have it both ways; it cannot simultaneously tell an insured he must handle his own defense (and possibly pay the final judgment himself) and, at the same time, maintain ultimate control over the litigation by retaining the right to deny settlement.

Similarly, the Supreme Court of Arizona has recognized that while an insurer technically has not breached the contract by defending under a reservation of rights, "neither did it accept full responsibility for [the insured's] liability exposure." *United Services Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246, 251 (1987). Insurers who defend under a reservation of right thus place their insureds in the "precarious position" between obeying the wishes of their maybe insurers or protecting themselves from the "sharp thrust of personal liability" that could well arise if coverage is ultimately denied. *Id.* (citation omitted). Furthermore, allowing the insurers simultaneously to protest or deny coverage and to control the course of the litigation "hamstrings insureds while granting the insurer a double bite at escaping liability." *Id.* The insurer will not have to pay if either the insured wins at trial *or* if the insurer wins its dispute over coverage. "The insureds risk financial catastrophe if they are held liable, while the insurer may save itself by litigating both issues the insured's

liability and the coverage defense—and winning either." *Id.* Therefore the Arizona Supreme Court held that "the cooperation clause prohibition against settling without the insurer's consent forbids an insured from settling only claims for which the insurer unconditionally assumes liability under the policy." *Id.* at 252. This court concludes that the Illinois Supreme Court would agree with *Commonwealth Edison* and adopt the reasoning of *Cay Divers, United Services* and like-minded cases (*See, e.g., Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982); *Midwestern Indem. Co. v. Laikin*, 119 F.Supp.2d 831 (S.D.Ind.2000)). Zurich's reservation of rights precludes it from dictating the course of this litigation. Kelley may thus settle with HA–LO without breaching the consent clause of the insurance contract.

### b. Cases Cited by Zurich

Zurich has cited a number of cases to support its argument that Kelley may not settle without its permission, none of which are relevant or controlling. For example, in *Thornton v. Paul*, 74 Ill.2d 132, 23 Ill.Dec. 541, 384 N.E.2d 335 (1978), the Illinois Supreme Court held that an insurer who fails to defend the insured is not estopped from raising a coverage defense where the plaintiff and the defendant in the underlying action colluded regarding both the claim and the settlement. No evidence of any such collusion has been presented in this case. *Clemmons v. Travelers Ins. Co.*, 88 Ill.2d 469, 58 Ill.Dec. 853, 430 N.E.2d 1104 (1981) is also dissimilar from the facts of this case. In *Clemmons*, the Illinois Supreme Court held that an insurer who fails to defend may not later contest coverage. While *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 644 (Iowa 2000), explicitly disagrees with *Cay Divers* and *United Services*, it concludes that "an insurance company cannot use its erroneous belief that it has no coverage to justify a refusal to settle." In fact, the court specifically recognized that, "at the point in time that the insurer is faced with a fair and reasonable settlement demand that a reasonable and prudent insurer would pay, the insurer must either abandon its coverage defense and pay the demand or lose its right to control the conditions of settlement." *Id.*

Although courts are not in complete agreement on this issue, Illinois courts, along with a majority of courts in other jurisdictions, hold that when an insurer reserves its right to deny coverage, an insured may enter into a reasonable settlement without the insurer's consent and without losing coverage. The court therefore recommends that the district court grant HA–LO's motion for summary judgment on Count II and conclude that Kelley may enter into a reasonable settlement without Zurich's consent without losing any coverage he may have under the Zurich policy.